DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Orville R., appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated parental rights to J.O. and B.R. and placed them in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Appellant is the biological father of B.R., born February 8, 1998. The biological father of J.O., born January 6, 1997, is deceased. The mother of both children, Amanda Everhart, has not appealed from the judgment of the trial court.
 {¶ 3} Appellant had lived with Everhart on and off over the course of 23 years. At the time that CSB initially became involved in this case, Appellant was living elsewhere. B.R. and J.O. were removed from Everhart's home on June 21, 2003, following reports from a neighbor that Everhart was striking the children and the children were screaming. The police were called, found Everhart to be uncooperative and belligerent, and took both children into custody.
 {¶ 4} CSB then initiated the present action by filing a complaint and alleging that the children were abused, neglected and dependent. Following adjudicatory and dispositional hearings, J.O. and B.R. were found to be dependent children, and were placed in the temporary custody of CSB. The allegations of abuse and neglect were dismissed.
 {¶ 5} Case plans were established for both Everhart and Appellant. Everhart's case plan focused on the need to: (1) obtain reliable income; (2) improve her parenting skills; (3) address mental health issues; and (4) address substance abuse issues. Appellant's case plan required him to: (1) obtain reliable income in order to meet the family's needs; (2) complete a drug and alcohol assessment, follow all recommendations, and provide random drug screens; (3) attend counseling sessions at a mental health agency, and demonstrate the ability to manage conflict and stress; (4) establish paternity and provide support for B.R.
 {¶ 6} On January 5, 2004, CSB moved for permanent custody of both children. Following a hearing, the trial court denied the motion, observing that although the children were bonded with their parents, the parents were unable to take custody at the time. The trial court sua sponte granted a six-month extension of temporary custody.
 {¶ 7} On November 23, 2004, CSB filed a second motion for permanent custody. Following a hearing, the trial court denied a pending motion for a six-month extension of temporary custody, and granted CSB's motion for permanent custody. Appellant timely appeals and assigns one error for review.
 ASSIGNMENT OF ERROR
"The trial court erred and abused its discretion by granting permanent custody, that was against the manifest weight of the evidence and not supported by clear and convincing evidence, where the best interests of the children indicated that a six-month extension should have been granted."
 {¶ 8} Appellant contends that the trial court erred in finding that the best interests of the children warranted granting permanent custody to CSB, rather than a six-month extension of temporary custody.
 {¶ 9} As noted above, Everhart has not appealed from the judgment of the trial court. Appellant, on the other hand, has challenged the termination of parental rights as to both children. However, since Appellant is not the father of J.O., does not have any legal relationship to the child, and never moved for legal custody of the child, Appellant lacks standing to challenge the judgment of the trial court as to J.O. Therefore, we consider Appellant's assignment of error only in regard to the custody of his child, B.R.
 {¶ 10} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In reWilliam S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 11} Although Appellant contends that the trial court abused its discretion and entered an order that was against the manifest weight of the evidence, this court does not review this finding under an abuse of discretion standard, for a trial court has no discretion to make a finding that is not supported by the evidence. This court reviews a trial court's factual findings to determine whether they were against the manifest weight of the evidence. See In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3.
 {¶ 12} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. Id. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 14} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 15} Appellant does not dispute that B.R. had been in the custody of CSB for at least 12 of the prior 22 months. He does, however, challenge the finding that permanent custody was in the best interest of the child.
 {¶ 16} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 17} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at 7; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 18} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of B.R. The evidence before the trial court demonstrated that Everhart has a lengthy and unresolved history of problems with mental health, substance abuse, and anger management. Furthermore, she was inconsistent in her visitations, did not appear at the permanent custody hearing, and there is no indication in the record that she would play a role in the life of either child in the future. In addition, she previously had her parental rights terminated as to three other children. See In re Everhart (Dec. 11, 1996), 9th Dist. No. 17786 and In re Sheppard and Copley (Mar. 28, 1990), 9th Dist. No. 14297. Still another of her children was placed in the legal custody of his father.
 {¶ 19} As to Appellant's relationship with B.R., there was testimony before the trial court that Appellant was very good with both children during visitation. He reportedly interacted very well with the children, played games with them, set limits and was able to control them. However, Appellant had visited consistently for only three months before the permanent custody hearing. He had had no contact with B.R. for the first six months of temporary custody, and then visited inconsistently for nine months. His visitations had not progressed beyond twohour weekly visits at the visitation center. There was concern that Appellant would not be able to take care of the children on a full-time basis.
 {¶ 20} Over the course of these proceedings, Appellant made little progress on his case plan. In regard to the objective directed towards substance abuse, Appellant did obtain an assessment, in which he admitted that his work and social activities had been affected by substance abuse within the last year. However, he failed to follow through with recommendations for a detoxification program, outpatient treatment program, and urine screens.
 {¶ 21} Appellant had also been asked to participate in an anger management program, but he failed to do so. He testified that he recently visited Everhart's apartment, where he was assaulted by one of her friends, and then broke a window in anger. Appellant explained that he moved out of Everhart's apartment because of her violent behavior towards him and that her friends are "troublemakers," and, yet, significantly, when he moved out of the home, he left the children alone with her.
 {¶ 22} In addition, Appellant was to participate in a parenting program. Appellant testified that he attended only four parenting classes, and then stopped. The children have some particular needs in that they had both been diagnosed with Attention Deficit/Hyperactivity Disorder, and had a history that included firestarting, cruelty to animals, and acting out sexually with a five-year old girl. The diagnosis of Attention Deficit/Hyperactivity Disorder requires that the children be closely supervised and have a strict routine. Their behaviors have improved through counseling and the benefits of a stable home. The caseworker stated that she doubted Appellant could provide the necessary care that is required. Appellant testified that he believes he knows how to provide for the children, and Appellant's employer stated that he has had Appellant baby-sit for his own children.
 {¶ 23} Appellant's case plan also required him to obtain reliable income to provide for the family's needs. Appellant is employed in the rehabilitation of houses, and he was reported to be an excellent worker. Appellant currently receives $300 per week in cash, plus housing, in exchange for his work. He lives in one of the homes that is being rehabilitated, and expects to lease the home when it is completed. Previously, his housing had been extremely unstable — having lived with Everhart, with several different friends, at a mission, and in a hotel. While his current housing arrangement may be convenient for Appellant, it is not clear that such housing would be available, appropriate, and stable for a child.
 {¶ 24} Consequently, it appears that Appellant has made little progress on his case plan over the 18 months of this proceeding. Even more significant is the distinct lack of progress during the last six months, after the caseworker advised Appellant to intensify his efforts because Everhart's prospects of regaining custody were not promising.
 {¶ 25} On the other hand, B.R. and J.O. are doing very well in foster care. They are very close to each other and have always lived together. CSB, the guardian ad litem, and Appellant all believed that the children should be kept together. They have been in the same foster home for a year. Their behavioral problems have diminished, and they are both doing well in school.
 {¶ 26} The guardian ad litem spoke on behalf of the children. She recommended that it would be in the best interest of the children to be placed in the permanent custody of CSB. She emphasized that the children need permanency, and that neither of the parents is in a position to provide care for the children at the present time. She expressed particular concern with Appellant's history of alcohol abuse and the fact that he has not addressed the problem. The children have a number of issues and need a permanent, stable placement with adults who are able to address their needs. The guardian ad litem does not believe Appellant has sufficient permanency or that he can take care of the children.
 {¶ 27} The custodial history of B.R. reveals that the child lived with Everhart and Appellant from birth, February 8, 1998, until a previous intervention by CSB in November 1998. B.R. was returned to Everhart under protective supervision in February 2000. Protective supervision was terminated in May 2000. B.R. was again removed from the home for purposes of the present case in June 2003, and has been in four different foster homes since that time. He has been in the current foster home for a year. Thus, at the time of the permanent custody hearing, B.R. had been in the custody of CSB for nearly three of his seven years. The caseworker, the guardian ad litem, and Appellant all expressed the opinion that the two boys are very close and should remain together.
 {¶ 28} There was testimony before the trial court that the children lack permanence, need stability, and that Appellant cannot provide the permanence that they need. While Appellant's employer testified that Appellant can likely continue to live in his present home, the trial court was also entitled to consider that the arrangement is uncertain, and that Appellant has a very lengthy history of unstable housing.
 {¶ 29} There are no suitable relatives available to care for the child. The boys are doing very well in their current foster placement. With stability, counseling, and therapy they have overcome past difficulties and have successfully addressed behavior problems. The caseworker testified that she did not believe a 6-month extension would make a difference, and does believe that the children are adoptable.
 {¶ 30} The final best interest factor that the trial court was required to consider was whether any of the factors in R.C. 2151.414(E)(7) to (11) applied. Of obvious relevance here, is the factor set forth in R.C. 2151.414(E)(10), which applies when "[t]he parent has abandoned the child." R.C. 2151.011(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days[.]" There was undisputed evidence that Appellant had not visited B.R. for six months, from June 2003 until January 2004. Appellant contends that he did not know where the child was at that time, but also admits that he knew the child was in custody and failed to call CSB to inquire.
 {¶ 31} As the best interest factors clearly weigh in favor of permanent custody to CSB, there was ample evidence before the trial court to support its finding that permanent custody was in the best interest of B.R. Because both prongs of the permanent custody test were satisfied, the trial court properly terminated parental rights and placed B.R. in the permanent custody of CSB. Appellant's sole assignment of error is overruled.
 {¶ 32} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Reader, J., Concur.
(Reader, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)