DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Michelle Powell ("Mother") and David G. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 I. {¶ 2} Mother and Father are the natural parents of J.G., born January 10, 2002. This case began on September 29, 2006, when CSB filed a complaint that alleged that J.G. was a neglected and dependent child because both her parents were incarcerated and her maternal grandmother, with whom the child had been living, was no longer able to take care of her. On December 5, 2006, the trial court adjudicated J.G. a neglected and dependent child.
 {¶ 3} On February 26, 2008, CSB moved for permanent custody of J.G. The agency alleged permanent custody was in the best interest of J.G. and that numerous grounds existed to *Page 2 
satisfy the first prong of the permanent custody test: that J.G. had been in the temporary custody of CSB for more than 12 of the prior 22 months, R.C. 2151.414(B)(1); that the parents had failed to remedy the conditions that caused the child to be placed outside the home, R.C. 2151.414(E)(1); both parents had chronic substance abuse problems that prevented them from providing a suitable home for the child, R.C. 2151.414(E)(2); the parents lacked commitment to the child, R.C. 2151.414(E)(4); and that the parents were prevented from providing a suitable home due to their repeated incarcerations, R.C. 2151.414(E)(13). Following the hearing, the trial court found that J.G. had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in her best interest. Therefore, the court terminated parental rights and placed J.G. in the permanent custody of CSB.
 {¶ 4} Mother and Father separately appealed and their appeals were later consolidated. Each parent raises two assignments of error. To the extent their assignments of error are similar, they will be addressed jointly.
 II. MOTHER'S ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 FATHER'S ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FINDING THAT THE PERMANENT CUSTODY DECISION WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND THE GRANT OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Mother and Father each maintain that the trial court's permanent custody decision was not supported by the evidence presented at the permanent custody hearing. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent *Page 3 
custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996),75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that the first prong of the permanent custody test was satisfied because both children had been in the temporary custody of CSB for more than twelve of the prior twenty-two months. Neither parent challenges that factual finding.[1] Instead, their evidentiary challenges focus on the best interest prong of the permanent custody test.
 {¶ 7} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and] *Page 4 
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[2].
 {¶ 8} Mother had minimal interaction with J.G. during the past several years because she had been repeatedly incarcerated. Mother had a lengthy history of criminal involvement throughout the life of J.G. and prior to her birth. Mother's criminal convictions have included numerous theft crimes and her most recent conviction, which led to her incarceration for most of this case, was for possession of drugs. Mother had been incarcerated for more than half of J.G.'s six-year life.
 {¶ 9} Father's interaction with J.G. had likewise been limited due to his own criminal convictions and periods of incarceration, as well as his lack of involvement in J.G.'s life prior to this case. Following his release from his most recent period of incarceration, Father began weekly visits with J.G. Several witnesses testified that the visits did not go well and that the quality of the visits had not improved over time. They explained that J.G. was reluctant to visit with Father, she had told them that she did not like him, and the witnesses believed that J.G. was afraid of Father because of some behavior that she had observed in the past. Father had a history of violence and, although no witness could verify that J.G. had ever observed Father acting violently, J.G.'s therapist testified that J.G. seemed to be genuinely afraid of something due to the consistency of J.G.'s reaction to her father. The therapist further testified that J.G. has told her that she does not like Father, that she is afraid of him, and that she worries that he will come to her house. The therapist believed that J.G.'s visits with Father had been detrimental to her. *Page 5 
 {¶ 10} J.G., who was six years old at the time of the hearing, had expressed to others that she wanted to live with her current caregiver, but her current caregiver was unable to care for her on a permanent basis due to her advanced age. J.G. had further indicated that she did not want to live with Father and she was ambivalent about returning to live with Mother. J.G. had expressed fear about returning to her mother's home due to the "bad people" who frequently came to her home. The guardian ad litem opined that permanent custody was in the best interest of J.G.
 {¶ 11} J.G.'s custodial history had included two extended periods in the temporary custody of CSB. In fact, she had spent more than half of her six-year life in the temporary custody of CSB. Her parents had been incarcerated repeatedly for multiple offenses involving drugs and theft and Father has also been convicted of violent crimes. Although Mother testified that she had "been there for [J.G.] her whole six years[,]" she had actually been incarcerated for more than half of her child's life and had no personal interaction with her during that time. Father recognized that he had been incarcerated "at least about five times[,]" and that "[i]t was probably best for me not to even be around [J.G.]." Father had never had custody of J.G. and his only involvement in her life had been through weekly supervised visits during the six months prior to the permanent custody hearing.
 {¶ 12} J.G. had spent most of her life in a state of uncertainty and it was clear that she was in need of a legally secure permanent placement. Neither parent was in a position to provide her with a permanent stable home at any time in the near future, nor were there any suitable relatives available to do so.
 {¶ 13} There was ample evidence before the trial court to support its finding that permanent custody was in the best interest of J.G. Mother's second assignment of error and Father's first assignment of error are overruled. *Page 6 
 MOTHER'S ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN DENYING A SIX MONTH EXTENSION TO APPELLANT."
 {¶ 14} Next, Mother contends that the trial court erred in failing to grant an extension of temporary custody for another six months. The parties do not dispute that the trial court's decision to grant or deny a request for an extension of temporary custody is determined, at least in part, based on whether such an extension would be in the best interest of the child. See, e.g., In re P.B., 9th Dist. No. 23276,2006-Ohio-5419, at ¶ 36. Because this Court has determined that permanent custody to CSB was in the best interest of J.G., it would be inconsistent that an extension of temporary custody would also be in her best interest. Mother's first assignment of error is overruled accordingly.
 FATHER'S ASSIGNMENT OF ERROR II "O.R.C. 2151.414(B)(1)(D) VIOLATES DUE PROCESS."
 {¶ 15} Through his second assignment of error, Father challenges the constitutionality of R.C. 2151.414(B)(1)(d), the so-called "12 of 22" basis for the first prong of the permanent custody test. Father did not dispute the constitutionality of this provision in the trial court; instead, he raises this challenge for the first time on appeal. We need not reach constitutional challenges that were not timely raised before the trial court. See State v. Awan (1986), 22 Ohio St.3d 120, syllabus.
 {¶ 16} Even if Father had timely raised a constitutional challenge, the trial court could have supported its decision with an alternate finding under R.C. 2151.414(E) and avoided the constitutional challenge. It is fundamental that courts do not reach constitutional issues unless it is absolutely necessary that they do so. Smith v. Leis,106 Ohio St.3d 309, 2005-Ohio-5125, at ¶ 54. *Page 7 
 {¶ 17} The record reflects that, in addition to the "12 of 22" ground, CSB alleged several additional statutory grounds in its motion for permanent custody. The agency alleged that the child could not be placed with the parents within a reasonable time or should not be placed with them due to any of the following factors: their failure to remedy the conditions that caused the child to be placed outside the home, R.C. 2151.414(E)(1); their chronic substance abuse that prevented them from being able to provide a suitable home, R.C. 2151.414(E)(2); their lack of commitment to J.G., R.C. 2151.414(E)(4); and their inability to provide a suitable home due to their repeated incarcerations, R.C. 2151.414(E)(13).
 {¶ 18} CSB presented evidence at the hearing to support each of these alternate permanent custody grounds. Had Father raised a timely challenge in the trial court, the trial court could have relied upon one of the alternate grounds, particularly the parents' chronic substance abuse and their failure to remedy the conditions that caused the child to be placed outside the home. Because neither parent challenged the propriety of the "12 of 22" ground for permanent custody, however, the trial court had no reason to find an alternate basis.
 {¶ 19} Because Father did not preserve this issue for appellate review, this Court will not reach the merits of his challenge. Father's second assignment of error is overruled.
 III. {¶ 20} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 8 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants.
DICKINSON, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)
[1] Father does challenge the constitutionality of the "12 of 22" provision, but that argument will be addressed under his second assignment of error.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case. *Page 1