[Cite as *In re L.H.*, 2017-Ohio-8472.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.H.

C.A. No. 28685

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 16-02-118

DECISION AND JOURNAL ENTRY

Dated: November 8, 2017

CALLAHAN, Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child L.H., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother gave birth to twins on February 2, 2016. Father is the biological father of one of the twins, L.H. (d.o.b. 2/2/16).[1] He was excluded by genetic testing as the father of the other twin. Paternity was not established as to the other child, and that child is not a subject of this appeal.

---

[1] Father is the biological father of twelve other children, eight of which are subjects of dependency/neglect/abuse cases in Cuyahoga County. None of Father's other twelve children are subjects of this appeal.

{¶3} Ten days after the child's birth, CSB filed a complaint alleging that she was a dependent child pursuant to R.C. 2151.04(C) and (D), in that her condition or environment warranted the state in assuming her guardianship; or that siblings in her household had previously been adjudicated dependent, neglected, or abused, and those circumstances placed the child in danger of abuse or neglect by a parent or household member. The agency obtained an emergency order of temporary custody the same day.

{¶4} Before L.H.'s paternity was established, Mother identified an alleged father. On May 6, 2016, that man was excluded by genetic testing. CSB immediately thereafter moved to add Father as a party and for an order directing him to submit to genetic testing. In the meantime, the matter proceeded to adjudication as to Mother and John Doe. The child was adjudicated dependent and placed in the temporary custody of CSB. The juvenile court adopted the proposed case plan submitted by the agency. The subsequent amended case plan directed Father to cooperate with CSB and CSEA to establish his identity as the father, to clarify his intentions to assume a parenting role, to contact the agency if he wanted visitation, and to cooperate in a home study. The next semiannual administrative review noted that Father contacted the agency on May 17, 2016, expressing his interest in establishing paternity and obtaining custody.

{¶5} At the review hearing in mid-July 2016, genetic test results had not yet been obtained. On August 15, 2016, the agency filed genetic test results indicating that Father was the biological father of L.H. After CSB moved to establish a parent-child relationship, the juvenile court ordered that Father was the biological father of L.H. Two months later, the guardian ad litem noted in her report prior to a review hearing that she had not met Father, because he failed to appear for a scheduled visit with the child on September 14, 2016.

{¶6} On October 12, 2016, CSB filed an amended case plan, adding additional case plan objectives for Father. The agency noted concerns that Father had been arrested at the end of July 2016, on serious charges including trafficking in heroin, possession of heroin, and having weapons while under disability. Father's latest case plan objectives included establishing visitation with the child, resolving his outstanding criminal matters, remaining drug free, submitting to an alcohol/drug assessment and counseling, and demonstrating an ability to maintain housing and employment to provide for the basic needs of the child. The juvenile court adopted the amended case plan as the order of the court. More than two months later, the agency noted Father's insufficient progress on his case plan objectives in a semiannual administrative review. Specifically, CSB noted that Father had not resolved his pending criminal charges, and he had not made himself available to meet with the child and establish a bond. Specifically, he had failed to appear for a scheduled visitation in early September 2016; and, although he had appeared for two visits in late September and October 2016, he had had no contact with the agency since that time. Accordingly, CSB had been unable to assess Father's parenting abilities or his ability to support the child.

{¶7} On December 21, 2016, CSB filed a motion for permanent custody. The matter was not scheduled for permanent custody hearing until May 23, 2017. The agency alleged that the child could not be placed with either parent within a reasonable time or should not be placed with her parents pursuant to R.C. 2151.414(B)(1)(a). Specifically as to Father, CSB alleged that Father had demonstrated a lack of commitment toward the child or otherwise showed an unwillingness to provide an adequate home for the child pursuant to R.C. 2151.414(E)(4).

{¶8} In the meantime, the guardian ad litem submitted two reports. In her first report, she noted that she had still never met Father. In her later report, she again wrote that she had

never met Father, because he had not been attending visitations or contacting the agency to establish a convenient visitation schedule. In addition, the guardian ad litem wrote that Father had not attempted any case plan compliance.

{¶9} Immediately prior to the permanent custody hearing, Mother executed a waiver of her trial rights and voluntarily surrendered her parental rights. The juvenile court then held a permanent custody hearing as to Father. The juvenile court issued a judgment granting permanent custody of L.H. and terminating Mother's and Father's parental rights to the child. Father filed a timely appeal and raises two assignments of error for review. This Court addresses the second assignment of error first, as it is dispositive of the appeal.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FINDING THAT THE CHILD COULD NOT BE PLACED WITH EITHER PARENT IN A REASONABLE AMOUNT OF TIME OR SHOULD NOT BE PLACED WITH EITHER PARENT.

{¶10} Father argues that the juvenile court erred by finding that L.H. could not be placed with either parent within a reasonable time or should not be placed with either parent. This Court disagrees.

{¶11} "A juvenile court's termination of parental rights and award of permanent custody to an agency must be supported by clear and convincing evidence." *In re Z.G.*, 9th Dist. Wayne Nos. 16AP0039 and 16AP0041, 2016-Ohio-7636, ¶ 7, citing *In re C.W.*, 9th Dist. Summit Nos. 21809 and 21811, 2004-Ohio-1987, ¶ 21. Clear and convincing evidence is that which will "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Although Father argues that

the juvenile court abused its discretion in making its first-prong finding, "this court does not review this finding under an abuse of discretion standard, for a trial court has no discretion to make a finding that is not supported by the evidence." *In re J.O.*, 9th Dist. Summit No. 22510, 2005-Ohio-2399, ¶ 11. Instead, this Court reviews a challenge to the factual findings underlying an award of permanent custody to determine if the judgment was against the manifest weight of the evidence. *In re G.B.*, 9th Dist. Summit No. 22628, 2005-Ohio-4540, ¶ 8, citing *In re Ozmun*, 9th Dist. Summit No. 18983, 1999 Ohio App. LEXIS 1734, *3 (Apr. 14, 1999). Accordingly, we construe Father's argument as a challenge to the manifest weight of the evidence regarding the finding that L.H. could not or should not be placed with him.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C.

2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). In this case, Father does not argue that an award of permanent custody is not in the best interest of L.H. Instead, he limits his argument to the juvenile court's first-prong finding that the child cannot or should not be placed with him, and we review accordingly.

{¶14} The juvenile court found that the first prong of the permanent custody test was satisfied because the child cannot be returned to either parent within a reasonable time or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). Specifically as to Father, citing R.C. 2151.414(E)(4), the trial court found that Father had demonstrated a lack of commitment to the child by failing to visit her or to communicate with her in a reasonable manner, and by showing an unwillingness to provide an adequate permanent home for the child by failing to maintain regular contact with the caseworker.

{¶15} Pursuant to R.C. 2151.414(B)(1)(a), in determining that a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, the juvenile court must consider "all relevant evidence[,]" including the sixteen factors enumerated in R.C. 2151.414(E). Relying on the plain language of the statute, this Court has held that "the existence of only one of the factors under R.C. 2151.414(E) is sufficient to determine that a child cannot be placed with a parent within a reasonable time." *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 24. The factor relevant to this case is R.C. 2151.414(E)(4), which provides:

> The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶16} Father contacted the agency in May 2016, to inform the caseworker that he believed he was L.H.'s father and that he wished to submit to genetic testing. After paternity was established in mid-July, the caseworker contacted Father to inform him that he would be added to both the case plan and the visitation center schedule. Father's case plan objectives included resolving his pending serious criminal charges and participating in visits to develop a bond with the child. The caseworker notified Father regarding visitations by phone and by letter. Nevertheless, Father failed to appear at his first scheduled visitation.

{¶17} Father first met the child on September 28, 2016, when she was almost eight months old. CSB thereafter scheduled a weekly three-hour visit for Father on Wednesdays to coincide with Mother's visitation time. Father did not attend another visitation until October 26, 2016. He attended his third and final visitation three-and-a-half months before the permanent custody hearing, on February 8, 2017, arriving at 11:20 a.m. for a visit that was scheduled to begin at 9:00 a.m. Due to his multiple missed visitations with the child, the agency had removed Father from the visitation schedule. Nevertheless, the caseworker allowed him to visit with the child when he appeared, even well into the time scheduled for visitation.

{¶18} Father offered no explanation to the caseworker for his lack of contact with the child. He claimed, however, that there were "plenty of times" that he appeared for visitations but was "turned away." He could not provide any dates when that occurred, and the caseworker did not corroborate his claim. Because Father did not have a driver's license, the caseworker testified that she provided bus passes as part of the agency's efforts in support of reunification. Moreover, Father was not working throughout most of the case, and only obtained employment a month and a half before the permanent custody hearing. Even then, he only worked on Thursdays through Sundays, making him available for Wednesday morning visitations.

{¶19} Father testified that he engaged in "video chat[s]" with the child, facilitated by Mother, for at least two hours every Wednesday. The caseworker was not aware of any such communication with the child. Moreover, the guardian ad litem reported that she never saw any video chatting during her observations of any visits. In fact, the guardian reported that Mother would often sleep with the babies during visits and that Mother never used a phone when she was visiting with the twins.

{¶20} Even if Father somehow had video interaction with L.H. when Mother visited with the children, it is incredible to believe that Father was able to develop any bond with her via those means, given the child's very young age. Father could not name the child's favorite toy or describe her developmental delays, although he was aware of her eating disorder based on updates Mother had given him. Although he testified that the child is soothed when held, the guardian reported that L.H. is in fact inconsolable when separated from her foster mother. Accordingly, there was negligible evidence that Father had developed much understanding regarding the child or that Father and the child had developed any type of relationship.

{¶21} In addition, Father failed to maintain contact with the caseworker throughout the case after his initial indication of interest in May 2016. It was not until Father appeared late for a visit in early February 2017, that the caseworker learned that Father had moved from Akron to Cleveland as a condition of his bond in his criminal case. In addition, after that time, the caseworker was unable to make contact with Father using the cell phone number he had given her. After the February 2017 visit, Father never contacted the caseworker again, although he could have done so to discuss more visits, relocating visits to Cleveland, or obtaining assistance with other case plan objectives.

{¶22} Based on clear and convincing evidence that Father physically visited with the child only three times, despite the agency's provision of bus passes and no employment restrictions on his time on Wednesday mornings, Father demonstrated a lack of commitment to the child by failing to regularly visit L.H. when he was able to do so. *See In re J.H.*, 9th Dist. Summit Nos. 27574, 27589, and 27595, 2015-Ohio-1259, ¶ 22. Even assuming that Father may have engaged in video chats with the child despite the caseworker's and guardian's failure to witness such communications during their observations of Mother's visits, no significant communication with a child of such a young age could have occurred during those times so as to create a bond between Father and L.H. Finally, clear and convincing evidence of Father's lack of communications with the caseworker regarding his case plan objectives and his failure to keep her informed of his current address and other contact information demonstrated Father's unwillingness to provide an adequate permanent home for the child. Under these circumstances, the juvenile court's first-prong finding that L.H. could not or should not be returned to Father based on the R.C. 2151.414(E)(4) factor is not against the manifest weight of the evidence. Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY NOT GRANTING [FATHER'S] REQUEST FOR A SIX[-]MONTH EXTENSION OF TEMPORARY CUSTODY TO [CSB].

{¶23} Father argues that the juvenile court erred by denying his request for a six-month extension of temporary custody. This Court disagrees.

{¶24} The juvenile court's decision to grant or deny an extension of temporary custody is based, at least in part, on whether the extension would be in the best interest of the child. *See In re J.G.*, 9th Dist. Summit Nos. 24343 and 24350, 2008-Ohio-6934, ¶ 14, citing *In re P.B.*, 9th

Dist. Summit No. 23276, 2006-Ohio-5419, ¶ 36. As Father has not challenged the juvenile court's finding that an award of permanent custody was in the best interest of the child, his first assignment of error is overruled.

## III.

{¶25} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

MARK SWEENEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Attorney at Law, for CASA Guardian ad Litem.