OPINION
{¶ 1} Appellant James K. [hereinafter K.] appeals from a judgment of the Clark County Court of Common Pleas, Juvenile Division, which granted permanent custody of his three children to the Clark County Department of Job and Family Services (the Agency). For the following reasons, the judgment of the trial court will be affirmed.
 I *Page 2 {¶ 2} In 2004, K., his wife, and their three children, Sa.K., Sk.K., and J.K., moved from Clark County to Franklin County. In August, 2005 the K. family was facing eviction from their home, so K. contacted Franklin County Department of Job and Family Services seeking respite care. The three children were returned to K.'s care two weeks later. K. sought assistance again on May 3, 2006. Because K. was unemployed and homeless, he agreed to place the children in foster care. Temporary custody of the children was granted to Franklin County in July.
 {¶ 3} In March, 2007, a couple of months after K. had obtained employment and housing, the children were placed with him on a 60-day trial period, but Franklin County retained legal custody. On May 2, 2007 K. regained legal custody of his children.
 {¶ 4} The following month K. lost his job and moved with the children back to Springfield. He was unable to find employment or housing, staying occasionally with friends or relatives. For some period of time, the children stayed with their mother. However, she returned the children to their father's custody in November. On December 13th K. called Clark County Department of Job and Family Services (the Agency) seeking help. He stated that he could not care for the children and that he was thinking about hurting himself. The children were immediately removed from K.'s care, and the Agency received temporary custody of the children on January 22, 2008.
 {¶ 5} A case plan was established in January, 2008, wherein K. was to obtain and maintain regular employment for a significant amount of time in order to provide for the financial needs of his children, including procurement of appropriate housing. K. was also required to attend the children's therapy sessions and to complete a *Page 3 
parenting assessment, which included mental health, drug, and alcohol components, and to follow through with any recommendations. Finally, K. was allowed to visit his children twice a week for two hours, and he was supposed to bring meals for the children to half of those visits, with the children's mother providing the rest of the meals.
 {¶ 6} After the children had been in the Agency's custody for more than twelve months, the Agency filed a motion for permanent custody on April 30, 2008. Hearings on the motion were heard in June and July. The mother relinquished her parental rights and is not party to this appeal. Concluding that the children had been in the Agency's custody for at least twelve of the preceding twenty-two months; the parents had failed to remedy the situation which had necessitated the children's removal; the children could not be returned to their parents within a reasonable period of time or should not be returned to their parents; and custody to the Agency was in the children's best interests, the court terminated K.'s parental rights and awarded permanent custody of the children to the Agency. K. appeals.
 II {¶ 7} K.'s First Assignment of Error:
 {¶ 8} "THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT PROVIDED REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO REUNIFY THE CHILDREN WITH FATHER."
 {¶ 9} K. argues that the trial court erred in finding by clear and convincing evidence that the Agency had provided both reasonable case planning and diligent efforts to reunify him with his children. "Clear and convincing evidence is that level of *Page 4 
proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." Miller v. Greene CountyChildren's Services Board, 162 Ohio App.3d 414, 2005-Ohio-4035. For the following reasons, we agree with the trial court's conclusion that the Agency presented clear and convincing evidence that its efforts "were proper and sufficient to achieve the goal of reunification of the parents and children."
 {¶ 10} A trial court shall terminate parental rights and grant permanent custody of children to the State if the court determines by clear and convincing evidence that permanent custody is in the children's best interests and that the children have been in the State's custody for at least twelve of the preceding twenty-two months. R.C. § 2151.414(B)(1)(d). Alternatively, the court shall grant permanent custody if the court determines by clear and convincing evidence that permanent custody is in the children's best interests and that the children cannot be placed with a parent within a reasonable period of time or that the children should not be placed with either parent because the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the children to be removed from the home, despite reasonable case planning and diligent efforts by the Agency to assist in reunification. R.C. § 2151.414(B)(2) and (E). Both alternatives apply in this case.
 {¶ 11} At the trial the Agency detailed K.'s case plan. He was required to secure and maintain employment in order to be able to provide for the financial needs of his children, including procurement of appropriate housing. K. was also required to attend the children's therapy sessions and to complete a parenting assessment, which included mental health, drug, and alcohol components and to follow any *Page 5 
recommendations made as a result of the assessment. Finally, K. was allowed to visit his children twice a week for two hours and, during half of those visits, he was supposed to bring meals for the children.
 {¶ 12} The Agency provided referrals for all of these services, and the case plan was reviewed at monthly team meetings, which K. attended. There was also contact between K. and the caseworker regarding the case plan via telephone, e-mail, and letters. K. was repeatedly warned that he was not making significant progress on his case plan. The Agency arranged for regular visitation between K. and his children, including transportation in the form of monthly bus passes and an offer of rides from the social worker. K. was given a medical card so that he could obtain counseling and food stamps. He was also referred to the Job Readiness Program at WorkPlus.
 {¶ 13} Although K. claimed to have done all that he could in looking for a job, the caseworker testified that his primary search method was via internet resumes and that he did not take advantage of the many services offered at the job center, such as resume writing and interviewing skills. In fact, K. remained unemployed until he secured a part-time job at a fast food restaurant just days before the second hearing.
 {¶ 14} K. insists that, in addition to all of these services, the Agency should have provided him with sufficient money to obtain housing because Franklin County had done that for him in the past. However, the caseworker explained that the two counties operate under different systems and budgets and that such financial assistance was only available in Clark County for those who held employment and could pay future bills in order to maintain that housing.
 {¶ 15} K. also claims that he just needed more time in order to get his life in *Page 6 
order. However, this overlooks the importance of his children's right to "stable, secure, nurturing and permanent homes in the near term." In reAwkal (1994), 95 Ohio App.3d 309, 317, 642 N.E.2d 424, citation omitted. It also ignores the fact that K. has demonstrated a continuing pattern of losing his job and his housing and placing his children in foster care. The children had been in and out of foster care for their entire lives. They deserve "a legally secure permanent placement", which K. remains unable to provide. R.C. § 2151.414(D)(4).
 {¶ 16} Because the Agency proved by clear and convincing evidence that it had provided reasonable case planning and diligent efforts to reunify K. with his children, his first assignment of error will be overruled.
 III {¶ 17} K.'s Second Assignment of Error:
 {¶ 18} "THE GRANT OF PERMANENT CUSTODY IS NOT IN THE BEST INTEREST OF THE CHILDREN."
 {¶ 19} In his second assignment of error, K. asserts that permanent custody is not in the best interests of his children. In determining the best interest of a child, "the court shall consider all relevant factors, including, but not limited to the following:" the relationships that the child has with his parents and siblings, other relatives, and his foster family; the child's wishes; the child's custodial history, including prior placements outside the home; and the child's need for a legally secure, permanent placement and whether that may be achieved with or without a grant of permanent custody. R.C. § 2151.414(D). We conclude that in this case the juvenile court reasonably concluded that permanent custody is in the best interests of the children. *Page 7 
 {¶ 20} The K. children are bonded both to their biological parents and to their foster parents, as well as to each other. The three pre-school-aged children are too young to offer an opinion regarding their placement. The children have been placed out of the home several times in their young lives, including extended periods of time. Most important here is the children's need for a legally secure, permanent placement, which cannot be achieved with their father.
 {¶ 21} The Agency provided regular visitation, including transportation in the form of monthly bus passes and an offer of rides from the social worker. K. did attend almost all of the scheduled visitations, which were described by the caseworker and the visitation coordinator in positive terms. However, he often did not bring meals as requested.
 {¶ 22} Although referred in January, K. did not obtain his mental health assessment until April. In furtherance of the assessment, he visited the therapist again, at which time he tested positive for marijuana. K. was diagnosed with post-traumatic stress disorder. The therapist also noted that K. demonstrated extreme anger and that he blamed "the system" for being unjust. The therapist recommended weekly mental health counseling and tried to arrange for K. to return to Mental Health Services, where he had been a client in the past, but they would not accept him because of his failure to show for several previous appointments. She encouraged him to try to either rectify this or to make alternative arrangements, but he did neither.
 {¶ 23} Most significant in this case is the fact that K. has a lengthy history of unemployment and homelessness. In fact, these situations seem to be one of the primary causes for his repeated return to state agencies for assistance with caring for *Page 8 
his children. Most recently, K. had been unemployed for many months until he obtained a part-time position at a fast food restaurant just a week before the second hearing. During much of that time, he lived in his car, which he was unable to keep. At the time of the hearing, K. was living in a homeless shelter.
 {¶ 24} Furthermore, the children are already experiencing the psychological effects of the instability of their home life. At the time of the December, 2007 placement, Sa.K. was five; Sk.K. was four; and J.K. was three. None of the children were up-to-date on their immunizations, and none had ever seen a dentist. All three children have special needs. Although there was no evidence that the children were physically abused, they had been traumatized by their unstable living situation and the domestic violence that they witnessed between their parents. Sa.K. has been diagnosed with both reactive attachment and oppositional defiant disorders and with ADHD. She also exhibited sexual boundary issues after being molested while in foster care. Sk.K. has boundary issues and has been diagnosed with anxiety and attachment disorders. She also is verbally threatening to others. J.K. has boundary issues; he has also been diagnosed as having reactive attachment disorder and ADHD. At the time of the hearing Sa.K. was being tested for learning and emotional education disabilities, and the decision had already been made that she would repeat kindergarten. The three children were all actively involved in intensive therapy. Because of their special needs, the children are in need of structure, which K. is unable to provide.
 {¶ 25} One therapist counseled the two younger children, but she referred the oldest child for more intensive therapy with another therapist. Although the case plan *Page 9 
required K. to attend the children's therapy sessions, the younger children's therapist testified that due to the children's particular problems, she did not want the parents present for counseling at first, but she did want to talk to them. That therapist never met K. in person, but K. did call her, and he scheduled future telephone calls with her to discuss the children's progress. However, he actually only called once, and that was not even at a scheduled time. K. did attend some family therapy sessions for his oldest child.
 {¶ 26} The court-appointed Guardian ad litem opined that the children need a caretaker who is consistent and who is not angry, but is matter of fact in terms of discipline. They also need a caretaker who is able to provide food, shelter, and clothing. The GAL recommended that the Agency be given permanent custody of the children.
 {¶ 27} The record is replete with evidence of K.'s continued inability to provide for his children's most basic needs. K. continuously and repeatedly failed to substantially remedy the conditions that caused the children to be removed from his custody despite the Agency's assistance. Moreover, he failed to fully avail himself of the Agency's services. For these reasons, the trial court did not abuse its discretion in concluding that permanent custody to the Agency is in the children's best interests. See, In re C.F., 113 Ohio St.3d 73, 83, 2007-Ohio-1104, 48 (applying abuse of discretion standard to trial court's findings under R.C. § 2151.414). K.'s second assignment of error will be overruled.
 IV {¶ 28} K.'s Third Assignment of Error: *Page 10 
 {¶ 29} "THE CHILDREN WERE NOT IN THE CARE OF THE AGENCY FOR AT LEAST 12 MONTHS OF A CONSECUTIVE 22-MONTH PERIOD."
 {¶ 30} Finally, K. contends that the time between the children's physical return to him in March, 2007 and the granting of legal custody two months later should not count toward the twelve month total required by R.C. § 2151.413(D)(1) before the filing of a motion for permanent custody. Pursuant to R.C. § 2151.413(D)(1), "if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, the agency with custody shall file a motion requesting permanent custody of the child." We conclude that the children were in the temporary custody of the Agency for more than twelve of the preceding twenty-two months before the motion for permanent custody was filed.
 {¶ 31} The motion for permanent custody was filed on April 30, 2008; therefore, the relevant twenty-two month period begins on June 30, 2006. The parties agree that pursuant to R.C. § 2151.413(D)(1), the children came into the Agency's custody sixty days after the May 4, 2006 shelter care hearing, i.e., July 3, 2006. The children remained in the Agency's legal custody for ten months, until May 2, 2007, when their father regained custody. However, the children had physically been returned to their father two months earlier, thus K. argues that only eight months had passed. While we sympathize with K.'s interpretation, a plain reading of R.C. § 51.413(D)(1) shows that the standard is the length of time of "temporary custody" by the Agency and not "physical custody." Because the Agency maintained temporary custody of the children during their trial return to their father, those two months count toward the twelve-month *Page 11 
requirement.
 {¶ 32} The children returned to the Agency's legal custody on January 22, 2008. The motion for permanent custody was filed a little over three months later on April 30, 2008. Those three months added to the previous ten months satisfied the twelvemonth requirement.
 {¶ 33} Furthermore, as discussed above, the trial court also found that the children could not be returned to their parents within a reasonable period of time or should not be returned because the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the children to be removed from the home, despite reasonable case planning and diligent efforts by the Agency to assist in reunification. Thus, even if twelve months had not passed prior to the filing of the motion, that finding along with the finding that permanent custody to the Agency was in the children's best interests, afforded the trial court with an adequate basis for granting permanent custody to the Agency.
 {¶ 34} K.'s third assignment of error will be overruled.
 V {¶ 35} Having overruled all three of K.'s assignments of error, the judgment of the trial court will be Affirmed.
BROGAN, J. and GRADY, J., concur.
Copies mailed to:
Amy M. Smith Mark J. Keller Hon. Joseph N. Monnin *Page 1