[Cite as *In re K.L.*, 2017-Ohio-9003.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re K.L.

Court of Appeals Nos. L-17-1201
L-17-1210

Trial Court No. JC 15250495

**<u>DECISION AND JUDGMENT</u>**

Decided: December 13, 2017

* * * * *

Stephen D. Long, for appellant A.G.

Laurel A. Kendall, for appellant K.L.

Kevin J. Ankney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** Appellants, K.L. ("mother") and A.G. ("father"), parents of K.L., individually filed appeals from the August 1, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting permanent custody of K.L. to the Lucas County Children Services Board ("LCCSB"). For the reasons which follow, we affirm this consolidated appeal.

**{¶ 2}** The mother asserts the following assignments of error:

I. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence.

II. The state did not prove by clear and convincing evidence that appellant failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home, pursuant to R.C. 2151.414(E)(1).

The father asserts the following single assignment of error:

THE TRIAL COURT ERRED IN GRANTING APPELLEE LUCAS COUNTY CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 3}** On September 28, 2015, LCCSB filed a complaint in dependency against the mother and R.L., who was believed to be the "legal father" of K.L. LCCSB indicated that an older sibling had been removed in May 2012 because of domestic violence between the mother and R.L., unstable housing, and parental drug abuse and those same issues applied to K.L. LCCSB sought temporary custody of K.L. and, initially, the juvenile court granted LCCSB only protective supervision while the child remained with the mother. LCCSB filed an amended complaint on December 16, 2015, adding that

2.

another incident of domestic violence had occurred and identifying A.G. as the putative father, and again LCCSB moved for temporary custody.

{¶ 4} After the mother was arrested on December 22, 2015, she arranged for her mother to pick up K.L. in violation of a prior court order prohibiting R.L. and the maternal grandmother from having unsupervised visitation with K.L. K.L. was taken into shelter care on December 23, 2015, and interim temporary custody was awarded to LCCSB in an order journalized on December 29, 2015. LCCSB filed an amended complaint on December 23, 2015, seeking temporary custody of K.L., which was granted on December 29, 2015.

{¶ 5} K.L. was adjudicated by a magistrate to be a neglected and dependent child by consent of the mother following a January 7, 2016 hearing (but the order was not journalized until February 3, 2016). LCCSB's temporary custody of K.L. was continued. Dispositional review was scheduled for September 28, 2016. The finding of neglect and dependency and the award of temporary custody to LCCSB was affirmed by the juvenile court judge in a judgment entry filed February 22, 2016. Services were required to continue for the mother for dual diagnosis assessment, mental health medication, trauma counseling, and domestic violence services, with the goal of reunification.

{¶ 6} On January 27, 2016, A.G. was served with the complaint as the putative biological father of K.L. A separate adjudication and dispositional hearing was held for the putative fathers on March 4, 2016. In a March 9, 2016 judgment a magistrate found A.L. did not appear and A.G. consented to a finding of dependency only and adoption of

3.

the findings of fact from the January 7, 2016 adjudication hearing. The temporary custody award to LCCSB of January 7, 2016, was affirmed. On March 30, 2016, the magistrate found that A.G. had been established as the biological father of K.L. and R.L. was removed as a party. A.G. was ordered to make himself available for assessment by LCCSB. On April 5, 2016, the trial judge affirmed the January 7, 2016 finding of neglect and dependency and the award of temporary custody to LCCSB. A goal of reunification was also approved.

{¶ 7} On May 10, 2016, LCCSB filed a discretionary motion for permanent custody of K.L. Although LCCSB asserted its motion was filed pursuant to R.C. 2151.353(B) and R.C. 2151.414, it was actually filed pursuant to R.C. 2151.353(C) and R.C. 2151.413(A). LCCSB asserted that the factors of R.C. 2151.414(B)(1)(a), (b), and (d) applied to warrant an award of permanent custody to LCCSB.

{¶ 8} Following a hearing on the motion on January 18-20, 2017, the trial court denied the motion. The court found the mother had significantly addressed the case plan services. The father was found to have completed a dual assessment and was referred for substance abuse and anger management services. The court extended temporary custody for six months to give the parents time to complete their case plan services, to July 20, 2017, and the hearing on the motion for permanent custody was continued until July 20, 2017.

{¶ 9} LCCSB filed its second motion for permanent custody on July 10, 2017, asserting that the child cannot be placed with either parent within a reasonable time or

4.

should not be placed with the parents, R.C. 2151.414(B)(1)(a); the child has been in the temporary custody of LCCSB for 13 of the past 22 months, R.C. 2151.414(B)(1)(d); the mother and father have abandoned the child, R.C. 2151.413(B)(1)(b); and permanent custody is in the child's best interest, R.C. 2151.413(D).

{¶ 10} A hearing on the motion was held on July 20, 2017, which was limited to the issue of whether the parents of K.L. had completed the services since the extension of time had been granted in the court's January 2017 order. The following evidence was admitted.

{¶ 11} The LCCSB caseworker testified that LCCSB has been concerned about the violent relationship between the mother and R.L., the father of the mother's two older children, and the mother's deception about her ongoing relationship with R.L. and his presence in the home. Over the prior six months, the caseworker testified, LCCSB had assisted the mother to find other housing, but she had not secured other housing. In June 2017, the caseworker confronted the mother about R.L. living at her home after discovery of three 911 calls made since January 2017, by R.L. or the mother, alleging domestic violence between the two. The caseworker had also taken photographs depicting R.L.'s car in front of the mother's home on June 1 and June 13, 2017. When confronted, the mother was angry that her privacy had been violated, and she was not willing to explain or give a reason for contact with R.L. The guardian ad litem testified she was told by the mother that she left her keys in the mailbox for the landlord to make repairs and later found that R.L. had moved in and she could not make him leave. The guardian ad litem

5.

believed the mother had not been honest with the caseworker about living with R.L and that the two had been living together for some time as evidenced by the 911 calls.

{¶ 12} The caseworker also testified she was approached by the mother in June 2017, for help with regard to evicting R.L. from her house. The caseworker suggested that the mother consult with an attorney about obtaining a civil protection order against R.L. The mother told the caseworker that she had contacted the police and was told they could not do anything about R.L. The caseworker was informed by the mother that her solution was to move into a YMCA battered women's shelter on July 3, 2017, because no men are allowed.

{¶ 13} The caseworker acknowledged the mother had successfully completed her probation and her case was closed in February 2017. She had also continued her counseling regarding domestic violence and had been taking her medication regularly. The mother now receives Social Security and is financially able to take care of K.L. While the mother tested positive for marijuana in January 2017, the caseworker testified substance abuse had never been a major concern regarding the mother. The caseworker had observed the mother visit the child on a regular basis and her parenting skills or behavior with the child were appropriate.

{¶ 14} The caseworker also testified LCCSB referred the father five or six times since January 2017, for several drug screens, and he tested positive for the use of marijuana in all but one of the tests. The guardian ad litem testified these tests results indicated a consistent usage or usage close to the time of the testing. In May 2017, she

6.

requested a drug test and the father refused admitting he would test positive for marijuana. The father admitted he uses marijuana about once a week to treat an injury he suffered in May 2017, because he has no insurance and cannot afford to go to the hospital or pay for prescription medication.

{¶ 15} The father completed his anger management course in April 2017, and was able to discuss the coping skills he has learned. He attended the program once a week for ten weeks. He was never referred to repeat the course. As a result of completing the course, his probation was terminated. The father testified he believed that as a result of the course, he had been able to change his behavior. However the caseworker testified she was still concerned about his anger management issues because he had become very defensive during case reviews held in March and July 2017, when they discussed completion of the dual assessment requested by LCCSB. The father raised his voice as he opposed the need for the assessment. The dual assessment had been a requirement of his case plan since it was determined that he was the father of the child. Although the caseworker had made referrals to service providers four or five times since January 2017, the father had not completed the assessment. The caseworker has never seen the father inebriated. The guardian ad litem had little contact with the father except for one time when he was at the mother's apartment. The guardian ad litem recalled that the father was supposed to stop using marijuana, but he had not. He was also not employed and did not live in an appropriate house for the child because he lives in a camper, which lacks running water, behind the home of his girlfriend's aunt.

7.

**{¶ 16}** The father testified he had scheduled the dual assessment the day of trial to be completed in the week following the trial. He further testified that he was unable to get the assessment completed since January 2017, because he lost his job in February.

He also admitted that he became aggravated at the case reviews because the caseworker was accusing him of slacking and was indicating they had already decided to take his child away. He admitted he raised his voice, but when he realized he had, he asked if the meeting was done and left. He had attempted to explain that after he lost his job, he had spent his time trying to find a job and housing. He testified he has gone to the library to submit applications at least six times a week. He was having trouble finding a job because the dual assessment would require that he attend a three-hour session three days a week and the bus ride takes approximately one hour plus the waiting time for the bus.

**{¶ 17}** The caseworker testified the father regularly visited with K.L. and requested cancelled visitations be made up, but they have not. The caseworker observed the father interact with the child and believed his interactions were appropriate. The father met monthly with the caseworker. The father testified he has a good relationship with the mother and believed they would be able to work out a visitation schedule.

**{¶ 18}** The caseworker believed, however, that issuing permanent custody to LCCSB would be in the best interests of the child because she is well taken care of in her prospective adoptive home and there are no issues of domestic violence or substance use concerns and she has contact with her biological siblings from time to time.

8.

{¶ 19} The guardian ad litem testified that she recommended the parental rights of the mother and father be terminated because of their lack of progress to modify their lives for the sake of the child.

{¶ 20} Upon completion of the hearing, the juvenile court granted the motion to terminate the parental rights of the parents in its August 1, 2017 judgment and awarded permanent custody of K.L. to LCCSB. The trial court found that R.C. 2151.414(B)(1)(d) applied (that K.L. had been in temporary custody of the agency for 12 out of the past 22 consecutive months). Although the court believed this finding alone was sufficient to terminate the parental rights of the mother and father, the court further found, pursuant to R.C. 2151.414(B)(1)(a), that K.L. could not be returned to either parent within a reasonable time. That finding was mandatory based on the court's additional findings that: the parents had failed to remedy the problems that initially caused K.L. to be removed from her home, R.C. 2151.414(E)(1); the parents had each demonstrated a lack of commitment toward the child by their unwillingness to provide an adequate permanent home for their child, R.C. 2151.414(E)(4); and the mother's parental rights were previously terminated as to her other two children, R.C. 2151.414(E)(11).

{¶ 21} The juvenile court further determined that granting permanent custody of K.L. to LCCSB was in K.L.'s best interest. While the mother had made progress in the areas for which the court extended custody, the court indicated it never expected to learn that the mother had allowed R.L. to move into her home during that time and only moved to the shelter two weeks prior to trial after the caseworker had confronted the mother.

9.

The juvenile court also noted that while the father had completed his anger management course, he had quit his job because he became angry with his supervisor and did not have appropriate housing for K.L. Furthermore, he never completed the mental and drug assessments required under the case plan, whether or not he would have been required to seek treatment. The court did not find the father's testimony to be credible regarding his reasons for failing to complete the assessment. Furthermore, the court found that appellant's asserted need to smoke marijuana because of an injury in May 2017, did not explain why he has been testing positive for marijuana use since January 2017. Both parents appealed from the juvenile court's judgment.

{¶ 22} We first address the mother's assignments of errors. She argues in her first assignment of error that the juvenile court's findings of fact relating to whether she had completed her case plan services were contrary to the manifest weight of the evidence.

{¶ 23} The statutory findings the juvenile court must make before making a final permanent custody award must be supported by clear and convincing evidence. R.C. 2151.414(B)(1); *In re L.H.*, 9th Dist. Summit No. 28685, 2017-Ohio-8472, ¶ 11. Clear and convincing evidence is the "measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 24} When reviewing a juvenile court's judgment under a manifest weight of the evidence standard, the appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. When weighing the evidence, this court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. Deference is given to the juvenile court's determinations of credibility of the witnesses, "which are crucial in these cases, where demeanor and attitude are not reflected well by the written record." *In re E.W.*, 4th Dist. Athens No. 17CA10, 2017-Ohio-7258, ¶ 34 (citations omitted). *See also In re E.B.*, 10th Dist. Franklin Nos. 16AP-352, 16AP-395, 16AP-443, 16AP-448, 2017-Ohio-2672, ¶ 50-51.

{¶ 25} In this case, the mother argues that the juvenile court erred in finding that her brief contact with R.L. during the pendency of the case in June 2017 indicated that she had not resolved the situation which caused the removal of K.L. She contends there was evidence R.L. moved into her home without her permission; she sought the assistance of the agency; and she resolved the issue by moving into the YMCA to get away from R.L. The mother argues the juvenile court judged the mother's temporary

contact with R.L. too harshly and ignored all of the positive actions she had taken in completing her case plan.

{¶ 26} The mother's argument raises a question of credibility rather than manifest weight. There was conflicting evidence presented regarding the mother's reestablishment of a relationship with R.L. and why she moved to the YMCA shelter. While the mother testified that she was attempting to avoid R.L. and correct the problem, the caseworker testified the mother acknowledged her continuing relationship with R.L. only after she was caught and moved to the YMCA just before the upcoming hearing.

{¶ 27} Upon a review of the evidence in this case, we find the juvenile court found the mother's characterization of her situation with R.L. was not credible. The court also found her move to the YMCA was too late to be a significant factor in the determination of whether she had complied with the case plan requirements. Both of these findings were supported by competent and credible evidence and were not contrary to the manifest weight of the evidence. Therefore, we find the mother's first assignment of error not well-taken.

{¶ 28} In her second assignment of error, the mother argues LCCSB did not prove by clear and convincing evidence that appellant failed continuously and repeatedly to substantially remedy the conditions which caused the child to be removed in the first place, the R.C. 2151.414(E)(1) factor.

{¶ 29} The mother assigns only one of the court's R.C. 2151.414(E) findings was erroneous. Since the trial court found two additional factors also applied, R.C.

12.

2151.414(E)(4) and (11), either of those two findings would support the juvenile court's finding under R.C. 2151.414(B)(1)(a) that the child cannot be placed with the mother within a reasonable time or should not be placed with the mother. R.C. 2151.414(B)(1). Nonetheless, because this case involves a termination of parental rights, we address the mother's argument.

{¶ 30} K.L. was removed from her home because of the domestic violence between the mother and R.L., unstable housing, and parental drug abuse. At the prior hearing on the motion for permanent custody, the trial court found that the mother had significantly addressed the case plan services. However, after the six-month extension, R.L. had moved back in with the mother sometime between January 2017 and July 2017. During that time, his car was seen on the premises multiple times and multiple 911 calls were made. Another domestic violence situation occurred which led to felony charges being filed against R.L. When confronted, the mother admitted that R.L. had moved into her home but asserted she had no control over the situation. The mother did not leave R.L. and moved into the YMCA housing only three weeks prior to the hearing on the motion for permanent custody.

{¶ 31} While the mother had made progress in some of the areas for which the court extended custody, the court found the mother had continued her relationship with R.L. The mother argues this one "mistake" should not be determinative of her progress, especially in light of the fact that she moved to the YMCA to get away from R.L.

13.

{¶ 32} We find the manifest weight of the evidence supports the juvenile court's finding that the mother had not been able to utilize her case plan services to protect herself and her child from domestic violence. Her continuing relationship with R.L. was one of the major reasons for the removal of K.L. and the mother's actions reflect she is unable to protect the child from R.L. The mother's second assignment of error is not well-taken.

{¶ 33} Next, we address the father's sole assignment of error that the juvenile court's judgment was contrary to the manifest weight of the evidence. Again, the court made several findings which individually support the termination of the father's parental rights and an award of permanent custody to LCCSB. We address each factor individually.

{¶ 34} First, the father asserts that the R.C. 2151.414(B)(1)(d) finding is erroneous arguing that LCCSB obtained temporary custody on January 7, 2016, when K.L. was adjudicated dependent and LCCSB was awarded temporary custody. Therefore, at the time LCCSB filed its second motion for permanent custody on July 10, 2016, K.L. had been in the temporary custody of LCCSB for only 18 months of temporary custody. Although we find the temporary custody time period asserted is incorrect, we find the father's argument well-taken.

{¶ 35} K.L. was removed from the mother's custody and placed in the temporary custody of LCCSB on December 23, 2015, pursuant to an ex parte order journalized December 24, 2015. Therefore, for purposes of the "sunset" date, the temporary custody

14.

order would have terminated on December 23, 2016, one year after the date the child was first placed in shelter care. R.C. 2151.353(G). But, temporary custody was extended in this case to July 20, 2016. R.C. 2151.414(D).

{¶ 36} Once an agency has acquired temporary custody, it *may* file a motion under R.C. 2151.415(A) at any time and request any of the six types of dispositional orders set forth in the statute, which includes an award of permanent custody to the agency. R.C. 2151.353(C); R.C. 2151.413(A); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22; *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 14. This discretionary motion must be filed by the earlier of 30 days before the temporary custody order expires or the date set for the dispositional hearing. R.C. 2151.415(A). Furthermore, the agency must allege, with particularity, that at least one of the factors of R.C. 2151.414(B)(1) existed at the time of the filing of the motion. Juv.R. 19; *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 24, citing *In re K. G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421, ¶ 28.

{¶ 37} However, an agency *must* file a motion for *permanent custody* if the child has been in the "temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period" (the "12 of 22 consecutive months" rule). R.C. 2151.413(D)(1). The time period of temporary custody is defined as beginning "the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home." *Id. See also* R.C. 2151.414(B)(1). In other words, the statute

15.

requires that an agency file for permanent custody before the sunset date if it has had temporary custody of the child for 12 months or more of the prior consecutive 22-month period, which ends on the date the motion for permanent custody is filed. *In re S.K.,* 2d Dist. Clark No. 2008 CA 67, 2008 CA 68, 2008 CA 69, 2009-Ohio-427, ¶ 31. An agency cannot use R.C. 2151.414(B)(1)(d) as a basis for a permanent custody award unless the time requirements are completed prior to filing its motion. Juv.R. 19; R.C. 2151.414(A); *In re C.W.*, paragraph one of the syllabus; *In re J.B.*, 6th Dist. Sandusky Nos. S-14-005, S-14-006, S-14-007, S-14-008, S-14-009, S-14-012, S-14-013, S-14-014, 2015-Ohio-460, ¶ 69; *In re E.P.,* 6th Dist. Wood No. WD-09-070, 2010-Ohio-3529, ¶ 56-58.

{¶ 38} In this case, the adjudication hearing involving the father was held March 4, 2016, and the judgment was issued March 9, 2016; but the date of the child's removal from her home (December 23, 2015), plus 60 days, was February 21, 2016. Therefore, the consecutive 22-month time period began February 21, 2016, and would have ended December 21, 2017. LCCSB could only file a motion for permanent custody based on R.C. 2151.414(B)(1)(d) after December 22, 2017, if during that time it had temporary custody of the child for at least a 12-month period. Furthermore, the agency was required to file for permanent custody before the sunset date for expiration of the temporary custody, December 24, 2017. It is clear that the intent of R.C. 2151.413(D)(1) and 2151.414(B)(1)(d) compel the agency to file for permanent custody before the sunset date and, if reunification has not occurred within that time period, after at least 12 months

16.

of temporary custody out of the 22 months of consecutive involvement of the agency, the agency can be awarded permanent custody.

{¶ 39} LCCSB filed its first motion for permanent custody on May 10, 2016, and renewed the motion on July 10, 2017. Even as of the later date, K.L. had been in the temporary custody of the agency for more than 12 months, but not "of a consecutive 22-month time period" before the filing of the motion.

{¶ 40} LCCSB argues we should reject our strict interpretation of R.C. 2151.414(B)(1)(d) because the agency would have to wait 22 months to file for permanent custody. LCCSB cites in support to *In re J.R.*, 5th Dist. Stark No. 2016CA00018, 2016-Ohio-2703, ¶ 49, citing *In re Vann*, 5th Dist. Stark No. 2005CA00127, 2005-Ohio-4398, ¶ 18 (father's appeal) (*see also In re Vann*, 5th Dist. Stark No. 2005CA00130, 2005-Ohio-4706, ¶ 24 (mother's appeal) and *In re T.B.*, 9th Dist. Summit No. C.A. 21124, 2002-Ohio-5036, ¶ 23, and *In re I.D.*, 7th Dist. Columbiana No. 09 CO 13, 2009-Ohio-6805, ¶ 44.

{¶ 41} In the case of *In re Vann*, 5th Dist. Stark No. 2005CA00127, 2005-Ohio-4398, the agency was granted temporary custody of a father's children approximately one month after they were born prematurely and with disabilities. The father had been incarcerated for some of that time and never visited the children. The trial court terminated the father's parental rights and awarded permanent custody to the agency based upon former R.C. 2151.414(B)(1)(b), the children were abandoned, and former R.C. 2151.414(B)(1)(d), the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period and should not be placed with

17.

either parent at this time or within a reasonable time. The father objected to the second finding on the ground that the agency had temporary custody for nearly 14 months, not 22 months as required by R.C. 2151.414(B)(1)(d). The appellate court noted that the motion for permanent custody did not allege R.C. 2151.414(B)(1)(d) as a basis for an award of permanent custody and that this second finding was unnecessary since only one finding was required. Furthermore, the court held that "an agency can file for permanent custody any time after the child has been in the agency's continuous custody for at least twelve months." *Id.*, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176.

{¶ 42} In the case of *In re T.B.*, a child was placed in the temporary custody of the agency in March 2000. At a sunset hearing in April 2001, the court granted a six-month extension of temporary custody. The agency filed a motion for permanent custody in September 2001. The mother argued on appeal that R.C. 2151.414(B)(1)(d) requires that the 22-month time period expire before a court could make a finding that a child has been in the custody of a public agency for 12 of the last 22 consecutive months. The appellate court dismissed this argument, holding that:

> There is nothing in the plain language of the statute that requires a public agency to wait until a child has been in its custody for twenty-two months before filing a motion for permanent custody. The statute requires only that the child must have been in the custody of a public agency for twelve or more months of a consecutive twenty-two month period. This

might include a situation where a child had been in temporary custody for six months on one occasion, was briefly out of agency custody, and then returned to temporary custody for another six months - all within a consecutive twenty-two month period. It may also include a situation where a child has been in the temporary custody of an agency for twelve consecutive months. In either event, once a child has been in temporary custody for at least twelve months out of twenty-two consecutive months, the second prong of the two-part test set forth in R.C. 2151.414(B) (1) is met. In this case, T.B. was in custody for over fifteen consecutive months. In those cases, the courts held the "12 of 22 consecutive month" rule did not require the agency to have had been involved in the child's case for 22 consecutive months, because the earlier of the child's removal or adjudication as a neglected, dependent, or abused child, before the agency could assert R.C. 2151.414(B)(1)(d) as grounds for finding that a child cannot or be placed with the parents within a reasonable time or should not be placed with the parents. *Id*. at ¶ 23.

**{¶ 43}** Other courts have interpreted R.C. 2151.414(B)(1)(d) in the same manner. *In re N.R.*, 12th Dist. Butler No. CA2007-12-314, 2008-Ohio-1993, ¶ 18; *In re P.C.*, 9th Dist. Summit No. 21734/21739, 2004-Ohio-1230, ¶ 21. Other courts have merely applied the statute in this way. *See In re R.T.*, 2016-Ohio-8490, 79 N.E.3d 138, ¶ 2-3 (8th Dist.) (permanent custody granted based on R.C. 2151.414(B)(1)(d) where the child

19.

has been in the temporary custody of the agency since a few days after his birth until approximately 17 months later).

{¶ 44} We have rejected the argument of LCCSB that the "22-consecutive month" period has no relationship to the agency's involvement for purposes of applying R.C. 2151.414(B)(1)(d). *In re J.B.*, 6th Dist. Sandusky Nos. S-14-005, S-14-006, S-14-007, S-14-008, S-14-009, S-14-012, S-14-013, S-14-014, 2015-Ohio-460, ¶ 69; *In re K.H.*, 191 Ohio App.3d 251, 2010-Ohio-5172, 945 N.E.2d 1074, ¶ 42 (6th Dist.). *Accord In re S.K.*, 2d Dist. Clark Nos. 2008 CA 67, 2008 CA 68, 2008 CA 69, 2009-Ohio-427, ¶ 31.

{¶ 45} An agency may file for permanent custody at any time for another other reason set forth in R.C. 2151.414(B)(1); *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 27. But, if the basis for the motion is R.C. 2151.414(B)(1)(d), the statute clearly requires the agency must have had temporary custody of the child for "12 months or more of a consecutive twenty-two-month period." *See In re C.W.* at ¶ 7-9.

{¶ 46} The dual legislative purpose behind the statutory scheme, including the "12 of 22 consecutive months" rule is set forth in R.C. 2151.01 and 2151.413(D): The statutes were designed to protect the interest of the child to have custody issues resolved within a reasonable time, to protect the constitutional and statutory rights of the parents, and allow sufficient time for reunification of the family. *See* R.C. 2151.353(G) (temporary custody orders terminate after one year); R.C. 2151.415(D)(4) (temporary custody can be extended for no more than two, six-month extensions); *In re C.B.*, 129

20.

Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 20, Brown, J., concurring; *In re C.W.*, at ¶ 22-23.

{¶ 47} The Ohio Supreme Court recognized in *In re C.W.* at ¶ 20, that the "12 of 22 consecutive months" provision of the statute was part of an alteration to the permanent-custody statute to limit the temporary custody status and mandate a time when an agency must file for permanent custody. While the *C.W.* court holding recognized that the statute guarantees parents at least "12 months to work toward reunification" before the agency can file for permanent custody, that holding did not eliminate the need for 22-consecutive months of agency involvement to have transpired. *Id.* at ¶ 22.

{¶ 48} The purpose of the "12 of 22 consecutive months" clause is clear when it is read in conjunction with R.C. 2151.413(D), which provides that the agency who has had temporary custody of a child for 12 months of a 22-month consecutive period must file a motion for permanent custody. When such a motion is filed, the basis for awarding permanent custody is R.C. 2151.414(B)(1)(d). The General Assembly has determined that it is in the best interest of the parties that custody issues be resolved within 24 months. *See* R.C. 2151.353(G) (temporary custody orders terminate after one year); R.C. 2151.415(D)(4) (temporary custody can be extended for no more than two, six-month extensions). If the 22-consecutive months does not mean 22 months of agency involvement, there was no need to set forth that number in the statute. Instead, the statute would have required permanent custody to have been sought after 12 months of

21.

temporary custody had expired, regardless of whether temporary custody was intermittent or continuous.

{¶ 49} We conclude the trial court erred in finding that R.C. 2151.414(B)(1)(d) could be a basis for awarding permanent custody. However, there were other grounds for the award of permanent custody and, therefore, this error is not reversible error.

{¶ 50} The father next argues that the R.C. 2151.414(E)(4) finding was mentioned at the hearing, but was not part of the August 1, 2017 final judgment. We disagree. The court held in its judgment that it found "pursuant to R.C. 2151.414(E)(1), (4), and (11) by clear and convincing evidence that the minor child * * * cannot and should not, be placed with either parent within a reasonable time." Clearly R.C. 2151.414(E)(11) was applicable only to the mother. However, the court specifically found that neither parent remedied the problems that caused the child's removal and they "have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." That finding alone was sufficient to support the juvenile court's award of permanent custody to LCCSB.

{¶ 51} With respect to the R.C. 2151.414(E)(4) finding, the court found regarding A.G. "the following facts were proven by clear and convincing evidence": A.G. was referred to substance abuse treatment but was unsuccessfully discharged for non-compliance; he had failed to undergo dual diagnostic assessment to determine whether he needed services regarding substance abuse and mental health; he was on probation, he has tested positive for marijuana use numerous times; he did not go to testing on

22.

occasion, once because he acknowledged he did not go because he would test positive for marijuana; he did not have independent housing and lives in a camping trailer behind his girlfriend's aunt's backyard; he has not worked since February 2017; he has been supplied with bus tokens to assist with transportation but asserts he has issues with transportation; and he did not engage in case plan services.

{¶ 52} Upon a review of the evidence, we find these factual findings are supported by clear and convincing evidence and are not contrary to the manifest weight of the evidence.

{¶ 53} Finally, the father asserts the juvenile court's determination that R.C. 2151.414(B)(1)(a) applies in this case was contrary to the manifest weight of the evidence because the court's finding that R.C. 2151.414(E)(1) (that the father had not substantially remedied the circumstances which caused K.L. to be removed from her home) was not supported by clear and convincing evidence. He argues that because K.L. was removed from her mother's home solely because of domestic violence between the mother and R.L., R.C. 2151.414(E)(1) cannot be applied to A.G. We disagree.

{¶ 54} While this case is unique in that the A.G. was not responsible for the removal of K.L. from her mother's home, the father's lack of participation in K.L.'s life at that time caused her to be placed with the agency. Furthermore, even after A.G. was identified as the biological father of K.L., the juvenile court adjudicated her a dependent and neglected child as to the father and continued temporary custody to the agency because A.G. could not provide a home for K.L. Therefore, the basis for K.L.'s

23.

"removal" from the father's home, or failure to be placed in his home, was the father's inability to care for his child. Furthermore, there was clear and convincing evidence that the father failed to remedy the reasons why K.L. could not be placed with him as he failed to complete the required case plan services and he still lacked sufficient housing at the time of the permanent custody motion hearing. We find the juvenile court's findings were not contrary to the manifest weight of the evidence and that the R.C. 2151.414(E)(1) factor was properly found to apply to the father.

{¶ 55} Therefore, we find the father's sole assignment of error not well-taken.

{¶ 56} Having found that the trial court did not commit error prejudicial to appellants and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to equally share the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                       _____

Thomas J. Osowik, J.                              JUDGE

James D. Jensen, P.J.                         _____
CONCUR.                                        JUDGE

                                                _____
                                                        JUDGE