**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re N.M.P.*, Slip Opinion No. 2020-Ohio-1458.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1458

IN RE N.M.P.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re N.M.P.*, Slip Opinion No. 2020-Ohio-1458.]**

*Domestic relations—Parental rights—R.C. 2151.414(B)(1)(d)—A children-services agency may seek permanent custody of a child who has been in the temporary custody of the agency for 12 of the consecutive 22-month period preceding the filing of the motion.*

(No. 2018-1842—Submitted July 9, 2019—Decided April 16, 2020.)

CERTIFIED by the Court of Appeals for Portage County,

No. 2018-P-0056, 2018-Ohio-5072.

_____

DONNELLY, J.

{¶ 1} This is a certified-conflict case from the Eleventh District Court of Appeals involving the interpretation of R.C. 2151.414(B)(1)(d), which provides a statutory mechanism for a children-services agency to obtain permanent custody of a child. We determined that a conflict existed between the Eleventh District and

the Sixth District Court of Appeals, *In re K.L.,* 6th Dist. Lucas Nos. L-17-1201 and L-17-1210, 2017-Ohio-9003, and ordered the parties to brief the following issue:

> "In a custody proceeding in which an agency has filed for permanent custody pursuant to R.C. 2151.414(B)(1)(d), must the agency establish by clear and convincing evidence that the child has been in the temporary custody of one or more children services agencies for a total of 12 months of a consecutive 22 month period *of agency involvement*?"

(Emphasis added.) 154 Ohio St.3d 1519, 2019-Ohio-768, 118 N.E.3d 257, quoting 11th Dist. Portage No. 2018-P-0056 (Dec. 27, 2018).

{¶ 2} We answer the certified issue in the negative. Accordingly, we affirm the judgment of the Eleventh District Court of Appeals.

## Facts and Procedural Background

{¶ 3} Appellant N.H. is the biological mother of the minor child, N.M.P. In a previous case, N.M.P. was placed into shelter care with appellee, the Portage County Department of Job and Family Services ("agency"), following a hearing on March 12, 2015. On April 24, 2015, N.M.P. was determined to be a dependent child and was placed in the temporary custody of the agency. Two six-month temporary-custody extensions were granted because the mother was in substantial compliance with the case plan. On March 14, 2017, N.M.P. was returned to the mother and that case was terminated.

{¶ 4} Approximately two months later, on May 17, 2017, mother returned N.M.P. to his previous foster parents and self-reported her inability to care for him. On May 25, 2017, a new complaint for temporary custody was filed by the agency and a shelter-care hearing was held. The mother stipulated to placing the child in the care of the agency. On June 22, 2017, N.M.P. was again found to be a

dependent child and the agency was given temporary custody. On August 30, 2017, a case plan was adopted and temporary custody was continued.

{¶ 5} By May 2018, the agency reported that neither the mother nor the father had made progress toward reunifying with N.M.P. The father had not seen or contacted N.M.P. since August 10, 2015, and the mother had had only one visit with N.M.P., on July 20, 2017.

{¶ 6} On June 5, 2018, the agency filed a motion for permanent custody of N.M.P. under R.C. 2151.413. Pursuant to R.C. 2151.414, a hearing was held (neither parent appeared but the mother was represented by her attorney[1]), and on July 25, 2018, the court placed the children in the permanent custody of the agency. On appeal, the Eleventh District affirmed.

**Analysis**

*Advisory-Opinion Argument*

{¶ 7} Before addressing the issue that was certified for our review, we must address the agency's contention that we should dismiss the appeal because it seeks an advisory opinion. The agency has not questioned our jurisdiction to answer the certified issue. Instead, according to the agency, resolving the certified question would not matter here inasmuch as the court of appeals upheld the trial court's granting of permanent custody not only after finding that the child had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period, R.C. 2151.414(B)(1)(d), but also because the child had been abandoned, R.C. 2151.414(B)(1)(b). Contrary to the agency's contention, however, the fact that the mother may not benefit from our decision does not affect our jurisdiction to answer the issue certified for determination. *Compare State v. Cupp,* 156 Ohio

---

1. The mother's attorney requested a continuance before the hearing began, stating that he had just learned that the mother had been recently arrested and jailed. The court, noting the mother's continued drug use and her absence from an earlier hearing, denied the motion.

St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811 (defendant's death did not deprive Supreme Court of jurisdiction to answer the certified-conflict question).

{¶ 8} Our authority to hear this case is based on Article IV, Section 2(B)(2)(f) of the Ohio Constitution, which establishes our appellate jurisdiction to review and affirm, modify, or reverse the judgment in any case certified by any court of appeals pursuant to Article IV, Section 3(B)(4). Article IV, Section 3(B)(4) authorizes the judges of a court of appeals to certify for our review and final determination the record of a case that is in conflict with a judgment pronounced upon the same question by any other Ohio court of appeals.

{¶ 9} In this case, there is no dispute that the Eleventh District court found that its judgment based on its reading of R.C. 2151.414(B)(1)(d) was in conflict with the judgment of the Sixth District court based on that court's reading of the statute; the alleged conflict is on a rule of law and not fact; and the Eleventh District's opinion clearly sets forth the rule of law upon which the conflict was based. *Whitelock v. Gilbane Bldg. Co.,* 66 Ohio St.3d 594, 596, 613 N.E.2d 1032 (1993).

{¶ 10} The agency nevertheless now argues that regardless of how we might resolve the certified-conflict issue, that will have no effect in this case in light of the alternative permanent-custody grounds of abandonment. The agency did not file any opposition to the mother's motion for certification of a conflict in the court of appeals. Nor did the agency file any objection to the certification before we determined on March 6, 2019, that a conflict existed. The agency's failure to challenge certification at any time before it filed its merit brief waived any objection to the Eleventh District's decision to certify for a conflict.

{¶ 11} Because the Eleventh District's interpretation of the legal issue before it is in conflict with another appellate district's interpretation of a rule of law, the court of appeals properly certified the case to this court even though our resolution of that issue may not affect the underlying trial-court judgment. *See*

*State v. Edmondson,* 92 Ohio St.3d 393, 396, 750 N.E.2d 587 (2001) (this court had jurisdiction even though resolution of certified conflict would not affect appellant's conviction on a lesser included offense).

{¶ 12} And, finally, we address the issue certified to us because of its importance in determining when a parent's custodial rights may be subject to permanent termination. *See Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811, at ¶ 18 (court may exercise discretion to answer certified issue that is of public or great general interest).

*Merits Determination*

{¶ 13} In this case we are asked to construe R.C. 2151.414(B)(1)(d), a specific statute pertaining to the permanent termination of parental custody found in R.C. Chapter 2151. R.C. Chapter 2151 contains procedural safeguards for child-welfare cases, including cases awarding permanent custody of a child to a children-services agency. *See In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 25.

{¶ 14} Here R.C. 2151.414 was triggered once the agency filed a motion for permanent custody pursuant to R.C. 2151.413(D): "An agency *must* file a motion for permanent custody if the child has been in the "temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period."

{¶ 15} In order to terminate parental rights and grant permanent custody to the agency, R.C. 2151.414(B)(1) requires that

> the court determine[] at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
> * * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶ 16} For purposes of division (B)(1), a child is considered to have entered the temporary custody of an agency on the earlier of the date of adjudication under R.C. 2151.28 or the date that is 60 days after the removal of the child from the home. R.C. 2151.414(B)(1)(e).

{¶ 17} An agency cannot seek permanent custody under R.C. 2151.414(B)(1)(d) unless the time requirements are completed prior to filing its motion. *In re C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, syllabus.

{¶ 18} Under R.C. 2151.353(G), an order of temporary custody expires "one year after the earlier of the date on which the complaint was filed or the child was first placed into shelter care." Under R.C. 2151.415(D)(1) and (2), a juvenile court may grant up to two six-month extensions of temporary custody.

{¶ 19} In this case, the mother contends that we should interpret R.C. 2151.414(B)(1)(d) to mean that before an agency may file a motion for permanent custody, the agency must have been involved for a consecutive 22-month period. She maintains that R.C. 2151.413 and 2151.414(B)(1)(d), which authorize the filing of permanent-custody motions for any child who has been in temporary custody for 12 or more months in a consecutive 22-month period, conflict with R.C.

2151.415, which permits up to two six-month extensions of temporary custody. Because of the potential for extensions, she reasons that R.C. 2151.414(B)(1)(d) must be read to require 22 months *of agency involvement* to ensure that the parent will have at least 12 full months to implement a case plan and work toward reunification. *See In re S.D-M.,* 9th Dist. Summit Nos. 27148 and 27149, 2014-Ohio-1501, ¶ 29.

{¶ 20} The mother relies on the conflict case of *In re K.L.,* 2017-Ohio-9003, at ¶ 48, in which the Sixth District interpreted the 22-month period in R.C. 2151.414(B)(1)(d) to mean 22 consecutive months, during each of which the agency was involved with the child, before the filing of a motion for permanent custody. That court stated:

> If the 22-consecutive months does not mean 22 months of agency involvement, there was no need to set forth that number in the statute. Instead, the statute would have required permanent custody to have been sought after 12 months of temporary custody had expired, regardless of whether temporary custody was intermittent or continuous.

{¶ 21} It is a cardinal rule of statutory construction that a statute's meaning is determined by the language that is used. If the language is clear and unambiguous, we apply the statute as written and refrain from adding or deleting words. *Dodd v. Croskey,* 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 24; *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997).

{¶ 22} To decide this case, we need look no further than the language of the statute. R.C. 2151.414(B)(1)(d) states that permanent custody may be granted to an agency if "[t]he child has been in the temporary custody of one or more public

children services agencies * * * for twelve or more months of a consecutive twenty-two-month period" and permanent custody is in the best interest of the child. The clear and unambiguous language of the statute must be applied as written. R.C. 2151.414(B)(1)(d) simply requires 12 or more months of temporary custody within a consecutive 22-month period. Nothing in R.C. 2151.414(B)(1)(d) requires 22 months of agency involvement before the agency seeks permanent custody.

{¶ 23} To meet the statutory requirement that a child be in the custody of a children-services agency for 12 or more months of a consecutive 22-month period, the child might have been placed in the agency's custody for one continuous period or the child might have been placed in the agency's custody, removed from the agency's custody, and then returned to the agency's custody.

> There is nothing in the plain language of the statute that requires a public agency to wait until a child has been in its custody for twenty-two months before filing a motion for permanent custody. The statute requires only that the child must have been in the custody of a public agency for twelve or more months of a consecutive twenty-two-month period. This might include a situation where a child had been in temporary custody for six months on one occasion, was briefly out of agency custody, and then returned to temporary custody for another six months—all within a consecutive twenty-two-month period. It may also include a situation where a child has been in the temporary custody of an agency for twelve consecutive months.

*In re T.B.,* 9th Dist. Summit No. 21124, 2002-Ohio-5036, ¶ 23; *see also In re J.R.,* 1st Dist. Hamilton No. C-190342, 2019-Ohio-3500, ¶ 27.

{¶ 24} In other words, the 22-consecutive-month requirement serves as a limitation period that defines a prescribed period of time to quantify the duration of the agency's temporary custody. *In re I.D.,* 7th Dist. Columbiana No. 09 CO 13, 2009-Ohio-6805, ¶ 43. It does not prescribe some minimum period of time of agency involvement with the child.[2]

{¶ 25} Here, N.M.P. was initially adjudicated a dependent child on April 24, 2015, and he remained in the temporary custody of the agency until March 14, 2017. N.M.P. was then returned to the mother for approximately two months. N.M.P. was again adjudicated a dependent child on June 22, 2017, and placed in the temporary custody of the agency. The agency filed its motion for permanent custody on June 5, 2018. Twenty-two months elapsed between August 5, 2016, and June 5, 2018. During those 22 months, N.M.P. was in the temporary custody of the agency for over 18 months. Thus, N.M.P. was in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, and the agency was entitled to seek permanent custody if it was in N.M.P.'s best interests. R.C. 2151.414(B)(1)(d).

{¶ 26} In so holding, it is important to remember that a determination that a child has been in the temporary custody of the agency for 12 or more months of

---

2. Even if the court were to look beyond the plain language of the statute, we are not persuaded that the legislature intended a full 22 months of agency involvement before an agency is required to seek permanent custody. R.C. 2151.414(B)(1)(d) was amended, effective March 18, 1999, to include the 12-out-of-22-month provision in an apparent response to the Federal Adoption and Safe Families Act of 1997 ("ASFA"), Pub.L. No. 105-89, 111 Stat. 2115. *See In re K. G.,* 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 16. ASFA conditioned receipt of federal funding upon a state's adoption of a system that greatly reduced the amount of time a child spends in temporary custody. *See New Jersey Div. of Youth & Family Servs. v. A.R.G.,* 361 N.J.Super. 46, 65-68, 824 A.2d 213 (2003). As part of this system, ASFA required states to seek the termination of parental rights when a child has been in "foster care under the responsibility of the State for 15 of the *most recent 22 months.*" (Emphasis added.) 42 U.S.C. 675(5)(E). In light of ASFA's requirements, we have little doubt that the legislative intent in enacting R.C 2151.414(B)(1)(d) is to require an agency to file for permanent custody when a child has been in the temporary custody of the agency for 12 of the most recent 22 months—not that the agency has been involved for a full 22 months.

a consecutive 22-month period only authorizes the agency to seek permanent custody. The agency still must prove by clear and convincing evidence, that it is in the child's best interest to grant permanent custody to the agency. R.C. 2151.414(B)(1). Twelve months of temporary custody does not necessarily result in permanent custody.

{¶ 27} R.C. 2151.01(A) provides that R.C. Chapter 2151 shall be liberally interpreted and construed to care for and protect children in a family environment and to separate a child from the parents only when necessary for the child's welfare or in the interests of public safety. *See In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29.

{¶ 28} Our finding today is consistent with the overall purposes of Ohio's child-welfare laws and our determination in *In re C.W.* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 22, in which we found that the 12-of-22 provision in R.C. 2151.413(D)(1) and 2151.414(B)(1)(d) "balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child."

{¶ 29} Accordingly, we will not interpret R.C. 2151.414(B)(1)(d) by inserting the phrase "of agency involvement" into it. Instead, we hold that the plain language of R.C. 2151.414(B)(1)(d) is satisfied if, at the time the agency moves for permanent custody, the child has been in the temporary custody of one or more children agencies for a total of 12 months out of a consecutive 22-month period. The decision of the Eleventh District Court of Appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

DEWINE, J., dissents, with an opinion joined by FISCHER, J.

––––––––––––––––––

**DEWINE, J., dissenting.**

{¶ 30} The majority gives some advice for future cases, but it says nothing that impacts the resolution of this case. Because I do not think this court should be writing advisory opinions, I would dismiss this appeal as improvidently granted.

{¶ 31} This court accepted a certified conflict to assess what is required to grant a permanent custody order under R.C. 2151.414(B)(1)(d). Does that provision require a full 22 months of agency involvement, or does it require only that the agency have 12 months of temporary custody within a 22-month period, no matter how long the agency has been involved? The majority holds that the statute does not require a full 22 months of agency involvement, and hence, decides that permanent custody was permissibly granted to the Portage County Department of Jobs and Family Services ("JFS").

{¶ 32} That may be a sensible resolution of that legal issue, but it's not something this court should be addressing in this case. The reason why is that, as the majority admits, nothing this court says about the 12-of-22 issue can change the outcome. This is so because the court of appeals gave two independent reasons for its decision to grant permanent custody to JFS. It held that JFS was entitled to custody based on the 12-of-22 rule *and* that JFS was entitled to custody because N.M.P was an abandoned child. There has been no challenge to the abandonment determination. Thus, regardless of which way we decide the 12-of-22 issue, JFS wins.

{¶ 33} The majority acknowledges this problem but argues that nevertheless we have jurisdiction to hear this case. That's not the relevant issue. Even if we have jurisdiction, it has long been understood that courts should not declare "principles or rules of law which cannot affect the matter at issue in the case before it." *Travis v. Pub. Util. Com.*, 123 Ohio St. 355, 175 N.E. 586, paragraph two of the syllabus (1931). We have explained that it is the "duty of every judicial tribunal" only "to decide actual controversies between parties legitimately affected

by specific facts." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). A prime justification for this rule is that parties should have "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

{¶ 34} Here, because the resolution of this appeal doesn't affect the parties in the case one whit, our traditional rule tells us that we have no business deciding it. The majority's insistence on doing so in the face of that rule is perplexing. Perplexing not simply because it is at odds with the long-held understanding of the judicial role, but also because it is completely unnecessary. This court has accepted another case that presents the same issue as this one*, In re S.M.,* Supreme Court case No. 2019-1485. In that case the parties actually do have a stake in the outcome—and a decision would amount to more than an advisory opinion.

{¶ 35} Explaining the inherent limitations of the judicial power, Chief Justice Roberts once reminded that "if it is not necessary to decide more, it is necessary not to decide more." *PDK Laboratories Inc. v. United States Drug Enforcement Agency*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring in part and concurring in judgment). This case presents the corollary to that principle: if it is not necessary to decide anything, don't. Because this court's decision cannot affect the case's outcome, I would dismiss it as improvidently allowed.

FISCHER, J., concurs in the foregoing opinion.

_____

Vic Vigluicci, Portage County Prosecuting Attorney, and Brandon J. Wheeler, Assistant Prosecuting Attorney, for appellee.

Neil P. Agarwal, for appellant.

_____