[Cite as *In re R.R.*, 2024-Ohio-5300.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

In re:  R.R.

Case No. 24CA1197

DECISION AND JUDGMENT
ENTRY

**RELEASED: 10/29/2024**

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Ariana Bowles Norris, Adams County Prosecuting Attorney, West Union, Ohio, for appellee.

_____

Wilkin, J.

{¶1} Appellant, C.B., appeals a decision of the Adams County Court of Common Pleas, Juvenile Division, that granted Adams County Children Services, ("the agency") permanent custody of her two-year-old son, R.R.  She argues that the trial court erred by granting the agency permanent custody of the child.  After our review of the record and the applicable law, we agree.  Therefore, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND

{¶2} On October 15, 2021, the agency filed a complaint that alleged the child (then, two days of age) was a "Dependent/Abused child."  The complaint alleged the following.  After the child was born, he tested positive for methamphetamine and amphetamine.  The agency learned that the child was in a hospital in Columbus, but the agency was not able to locate appellant.  The agency requested temporary custody of

the child.  On that same date, the agency sought and received ex parte temporary custody of the child.  At a shelter care hearing, the court continued the child in the agency's temporary custody.

{¶3} On November 16, 2021, the court adjudicated the child an abused child.[1] The court later entered a dispositional order that placed the child in the agency's temporary custody.

{¶4} On October 25, 2022, the agency filed a motion to modify the disposition to permanent custody.  The agency cited R.C. 2151.414(B)(1)(b) and (B)(1)(d) and asserted that placing the child in its permanent custody is in the child's best interest.

{¶5} On January 4, 2023, the court held a hearing to consider the agency's permanent custody motion.  At the hearing, caseworker Brooklyn Fleshman testified that she is the caseworker for appellant's four children, including R.R.  She explained that the agency removed the children from appellant's care upon learning that appellant and R.R. had tested positive for methamphetamine and amphetamine upon R.R.'s birth.

{¶6} Fleshman indicated that the agency developed a case plan for the family that required appellant to engage in drug and alcohol treatment, obtain a mental health assessment, take parenting classes, seek domestic violence assistance, and obtain safe and stable housing.  Fleshman stated that in April 2022, appellant "successfully completed inpatient treatment and moved to transitional living."  Additionally, appellant obtained employment, and at the time of the permanent custody hearing, she had

[1] In the magistrate's January 12, 2023 permanent-custody decision, the magistrate states that it previously adjudicated the child abused and dependent.  However, the November 16, 2021 adjudication order is not clear.  The court used a form entry that checked the "abused" box close to the child's name; the form then named three other children, who are not subject to this appeal, and checked the "dependent" box.  Regardless, the trial court needed to find only one or the other.  We therefore find that any ambiguity does not affect the outcome of this appeal.

independent housing.  Fleshman reported that appellant continues to engage in counseling sessions and that she has not had a positive drug test since December 2021.

{¶7} Fleshman testified that appellant's three older children are "well bonded" with appellant.  She further indicated that the three older children are placed with their great-grandmother, and they appear to be doing well.  Fleshman stated that R.R. has been placed with a foster family and has lived with this family since birth.  She reported that R.R. is "very bonded" to the foster family and is "doing well."

{¶8} The agency's counsel asked Fleshman "[w]hat concerns" she had "with a grant of permanent custody."  Fleshman responded:  "[A]t this time the agency is requesting that there's an extension for [appellant] to continue to work her case plan services to show that she's able to maintain along with, to give her the opportunity . . . to build a stronger bond with her children."  Fleshman stated that the agency believes appellant should have more time to build a bond with R.R., given that he has been with the foster family since birth.  Fleshman explained that appellant "has shown that she really . . . is going to put forth effort and she wants her children back.  Her visits are going well, and . . . you can just tell that she truly loves her kids."  Fleshman indicated that if appellant is given more time, the agency plans to increase her visits with the children.  She further stated that "the agency is looking into an in-home parenting provider" to allow visits to occur in appellant's home.  The court asked Fleshman to expand upon the agency's desire to seek an in-home parenting provider, and Fleshman explained that having an in-home parenting provider would help inform the agency as to

appellant's ability to parent the four children if they are returned to her custody. Fleshman thus requested the court to extend the temporary custody order.

{¶9} On cross-examination, Fleshman stated that the children can be returned to appellant within the next six months as long as appellant "shows that she's able to maintain." Fleshman has visited appellant's current home and stated that the home is appropriate for the children.

{¶10} The guardian ad litem (GAL) stated that "a couple months ago [she] would've been wholeheartedly recommending permanent custody" due to appellant's lack of progress with "relapse prevention." The GAL stated that appellant has since engaged in relapse prevention and that she recommends that appellant be given additional time to establish a bond with R.R. and to demonstrate that she can appropriately parent all four children.

{¶11} Regarding appellant's visits with the children, the GAL stated that the first visit was "chaotic." She explained that appellant "was having a hard time managing all four children." The GAL stated that she and Fleshman thus discussed "the possibility of the in-home parenting" once appellant was ready for "an unsupervised setting."

{¶12} The magistrate questioned the GAL and noted the court's concern that "this case had already been going on for a long time and mom isn't able to supervise four kids." The magistrate further expressed concern that the child has "now bonded with foster parents that are taking care of everything that child needs. And now we're gonna talk about introducing that child to mom, trying to build an attachment when mom could potentially relapse again."

{¶13} The magistrate stated that "[i]f this case were just about [R.R.]," the court would "be granting permanent custody of the infant today." The magistrate further pointed out that the foster parents "stepped up" to help the child and found that the bond that they established with the child is "significant." The magistrate continued: "[T]his is not about the parents have a fundamental right to raise their children, but it's about what's in their best interest." The magistrate stated that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that the court thus needed to consider only the best interest factors when deciding whether to grant the agency permanent custody of the child.

{¶14} The magistrate further stated:

[T]here's been insufficient evidence one way or the other in a lot of cases presented today. On the one hand I could probably argue the agency hasn't met their burden on anything, dismiss the case and the kids just go back to mom. The reverse of that is the agency has failed . . . to present any evidence as to why permanent custody would not be in the best interest of the children. And when it comes down to the reasonable period of time . . . that really only comes in play if there hasn't been the 12 out of 22. So, it's just best interest to these kids.

{¶15} Appellant then testified to explain the treatment that she has received. She stated that she completed a residential treatment program that focused on mental health, parenting, substance abuse, and relapse prevention. She continues to receive counseling for relapse prevention.

{¶16} Appellant agreed that the visits at the agency with the four children could be chaotic due to the small space. She stated that now that the visits occur at her grandmother's home, the visits are "not as chaotic."

{¶17} Appellant indicated that she has been visiting R.R. once per week and that she does not believe that she has received "enough time with him to build a good bond."

She explained that she has "a really good bond with" the three older children and thinks that she could establish a stronger bond with R.R. within six months. Appellant recognized that she has "messed up before" but stated "that doesn't define who I am and I just want [the children] home."

{¶18} At the end of the hearing, the magistrate stated that the court would "continue in progress, the permanent custody hearing" "to give the agency the time to do a proper report" and to give the GAL more time to investigate. The magistrate thus advised the parties that the court would "continue in progress for 30 days." The magistrate stated that the court would "take the testimony as far as it is under advisement" and that it would not issue "any decision yet."

{¶19} The magistrate additionally noted that the foster parents attended this hearing and asked the foster parents whether they had "anything" to say. The foster parent stated, "If there's anything I want to say it's this[:] we have made this a big matter of prayer and asking God to grant you wisdom and discernment in making your decision."

{¶20} The court concluded the hearing by stating that the court would "continue in progress" until February 1, 2023. The magistrate indicated that the court would "make a decision one way or the other" at the end of the February 1, 2023 hearing.

{¶21} After concluding the January 4, 2023 hearing, the magistrate entered an order that stated: "This case being continued in progress and is set for PERM. CSTDY IN PROGR on 02/01/2023." The court directed the GAL "to prepare a written report and recommendation for the hearing" and the agency "to prepare a permanent custody

information sheet."  The court instructed the GAL and the agency "to investigate the proposals they made at the hearing" regarding an in-home parenting provider.

{¶22} On January 12, 2023, the magistrate unexpectedly entered a decision that "rescinded and vacated" its previous order that had continued the "case in progress" and instead placed the child in the agency's permanent custody.  The magistrate found that the child had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that placing the child in the agency's permanent custody is in the child's best interest.

{¶23} On that same date, the trial court adopted the magistrate's decision and placed the child in the agency's permanent custody.

{¶24} Appellant later filed a motion for leave to file objections to the magistrate's decision.  She objected to the magistrate's finding that placing the child in the agency's permanent custody is in his best interest.  She also requested leave to file supplemental objections.  The trial court subsequently granted appellant leave to file objections to the magistrate's decision.

{¶25} On September 27, 2023, the agency filed a motion for a review hearing. The court granted the motion and set the matter for an October 10, 2023 review hearing.  On October 10, 2023, the court entered an order that found the agency "has made reasonable efforts towards finalizing the permanency goal for the child."[2]

{¶26} On February 16, 2024, the court entered a decision outlining the current status of the case.  The court noted that appellant's first attorney, Sara Shelton, left the

---

[2] The trial court record contains a June 12, 2023 filing that lists appellant's three other children in the caption along with their case numbers.  However, neither R.R. nor his case number is listed in the caption.  This filing is a magistrate's decision that indicated the agency had returned appellant's three older children to her custody and granted the agency protective supervision over the three older children.

public defender's office and Tyler Cantrell took over Shelton's cases. The court noted that Shelton missed the deadline to file objections to the magistrate's January 12, 2023 decision and that Cantrell subsequently asked for a motion for leave to file objections. The court granted Cantrell's motion. The court noted that the transcript was filed on March 6, 2023, but Cantrell did not file any supplemental objections. At the time of the February 16, 2024 entry, Cantrell no longer worked for the public defender's office. The court thus appointed a new attorney to represent appellant. The court granted new counsel 30 days to file supplemental objections.

{¶27} On March 18, 2024, appellant filed supplemental objections. She objected to the magistrate's decision on the following grounds: (1) permanent custody was not in the child's best interest; (2) the evidence failed to establish that the child cannot or should not be placed with appellant within a reasonable time; and (3) the agency failed to use reasonable efforts.

{¶28} The agency responded and, contrary to its position at the permanent custody hearing, now asserted that the trial court appropriately granted it permanent custody of the child.

{¶29} On May 7, 2024, the trial court overruled appellant's objections to the magistrate's decision and placed the child in the agency's permanent custody. The court found that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d). The court thus concluded that to the extent appellant asserted that the agency failed to demonstrate that the child cannot be placed with her within a reasonable time or should not be placed with her, appellant's argument was without merit.

{¶30} The court also overruled appellant's objection regarding reasonable efforts.

{¶31} The court additionally overruled appellant's objection to the magistrate's finding that placing the child in the agency's permanent custody is in the child's best interest. The court observed that appellant testified that she does not have a bond with the child. Other testimony "indicated that the foster family is very bonded to the child." The court recognized that the agency and the GAL wanted to give appellant more time to establish a bond with R.R., but the court further pointed out that they also stated that appellant "needed a third party in the home to be 'able to handle' all of the children."

{¶32} The court noted that the GAL described appellant's visit with the child as "chaotic" and indicated that she "had difficulty managing" all four children at once. The court found that the GAL testified that "absent some third party helping her, [appellant] cannot handle the children on her own." The court stated that it need not "hold the child in custodial limbo while a parent works on or promises to work on" case plan objectives "after the child has been in the [agency's] custody . . . for over 446 days."

{¶33} The court also concluded that the child needs a legally secure permanent placement. The court found that appellant (1) has not completed her case plan objectives, (2) "has virtually no interaction or relationship with" the child, (3) "has not remedied the conditions which caused the removal," (4) did not submit corroborating evidence of sobriety, and (5) "has continued to make choices in her relationships that cause a risk of harm to her children." The court thus overruled appellant's objections and placed the child in the agency's permanent custody. This appeal followed.

ASSIGNMENT OF ERROR

I.      THE TRIAL COURT ERRED IN TERMINATING C.B.'S LEGAL
        CUSTODY OF R.R.

{¶34} In her sole assignment of error, appellant argues that the trial court erred by granting the agency permanent custody of the child. More particularly, appellant asserts that the evidence fails (1) to support "[m]any" of the trial court's findings and (2) to demonstrate that placing the child in the agency's permanent custody is in his best interest.

STANDARD OF REVIEW

{¶35} Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re B.E.*, 2014-Ohio-3178, ¶ 27 (4th Dist.); *In re R.S.*, 2013-Ohio-5569, ¶ 29 (4th Dist.); *accord In re Z.C.*, 2023-Ohio-4703, ¶ 1. When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice

inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997); *accord In re Christian*, 2004-Ohio-3146, ¶ 7 (4th Dist.).

{¶36} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest-weight-of-the-evidence standard is "whether the juvenile court's findings . . . were supported by clear and convincing evidence." *In re K.H.*, 2008-Ohio-4825, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04 (1986).

{¶37} In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.").

{¶38} Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that

permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, ¶ 62 (4th Dist.); *In re R.L.*, 2012-Ohio-6049, ¶ 17 (2d Dist.), quoting *In re A.U.*, 2008-Ohio-187, ¶ 9 (2d Dist.) ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements . . . have been established.' "). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175.

## PARENTAL RIGHTS

**{¶39}** "[P]arents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests.'" *In re B.C.*, 2014-Ohio-4558, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (stating that "natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157.

**{¶40}** Additionally, the Ohio Supreme Court has described the permanent termination of parental rights as "'the family law equivalent of the death penalty in a

criminal case.'" *Hayes*, 79 Ohio St.3d at 48, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). Consequently, courts must afford parents facing the permanent termination of their parental rights "'every procedural and substantive protection the law allows.'" *Id.*, quoting *Smith* at 16; *accord B.C.* at ¶ 19. Thus, because parents possess a fundamental liberty interest in the care and custody of their children, the State may not deprive parents of their parental rights without due process of law. *In re James*, 2007-Ohio-2335, ¶ 16; *e.g.*, *In re A.G.*, 2014-Ohio-5014, ¶ 12 (4th Dist.); *In re M.H.*, 2011-Ohio-5140, ¶ 49–50 (4th Dist.). Moreover, a parent's right to due process "does not evaporate simply because" that parent has "not been [a] model parent[] or [has] lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753.

**{¶41}** "'Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest.'" *State v. Hacker*, 2023-Ohio-2535, ¶ 35, quoting *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996). As a general matter, Ohio's permanent custody "procedures comport with due process." *In re B.C.*, 2014-Ohio-4558, ¶ 27.

**{¶42}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect

children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 2007-Ohio-1104, ¶ 29, quoting R.C. 2151.01(A).

**{¶43}** In the case at bar, we question whether the trial court complied with the statutory procedures necessary to comport with due process. The magistrate held a permanent custody hearing, and during the hearing, the magistrate advised the parties that the court would continue the hearing until February 1, 2023, to allow the agency and the GAL to gather additional information. Moreover, the magistrate explicitly advised the parties that it would not be issuing a decision until after the February 1, 2023 hearing. But rather than continuing the hearing, the magistrate, without notice to any of the parties, inexplicably granted the agency permanent custody, despite questioning, during the permanent custody hearing, whether the agency had presented adequate clear and convincing evidence to establish that placing the child in its permanent custody would be in the child's best interest. The trial court subsequently adopted the magistrate's decision.

**{¶44}** The court's failure to give appellant a complete and meaningful hearing before severing her parental rights alone warrants a reversal of the trial court's judgment. Furthermore, as we explain below, the record demonstrates that a plain error occurred in that the record does not support a finding that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. This error serves as an additional ground that warrants a reversal of the trial court's judgment.

R.C. 2151.414(B)

**{¶45}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and, as relevant here, one of the following circumstances applies:

> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶46}** R.C. 2151.414(B)(1) instructs courts that are reviewing whether a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period to consider a child "to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home."

**{¶47}** Importantly, "[a]n agency cannot seek permanent custody under R.C. 2151.414(B)(1)(d) unless the time requirements are completed" before the agency files its permanent custody motion. *In re N.M.P.*, 2020-Ohio-1458, ¶ 17, citing *In re C.W.*, 2004-Ohio-6411, syllabus. Indeed, given the parental rights at stake, "an agency must afford parents the full 12-month period to work toward reunification before moving for permanent custody on R.C. 2151.414(B)(1)(d) grounds." *C.W.* at ¶ 23. Consequently, the time period that elapses between the date that an agency files a permanent custody motion and the date of the permanent custody hearing does not count. *Id.* at ¶ 26 ("the time that passes between the filing of a motion for permanent custody and the

permanent-custody hearing does not count toward the 12–month period set forth in R.C. 2151.414(B)(1)(d)"). These rules "balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child." *Id.* at ¶ 22, citing *In re K.G.*, 2004-Ohio-1421, ¶ 19 (9th Dist.).

**{¶48}** In the case before us, appellant does not dispute the trial court's finding that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. However, our review of the record shows that the trial court did not correctly calculate the length of time that the child has been in the agency's temporary custody. Instead, the trial court appears to have calculated the time that the child has been in the agency's temporary custody by starting with the date that the child was removed and ending with the date on which the permanent custody hearing began. However, R.C. 2151.414(B)(1) does not count the actual length of time during which a child has been in an agency's temporary custody. Rather, the statute specifies that a court shall consider a child "to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home." *Id.*

**{¶49}** In the case at bar, the agency filed its permanent custody motion on October 25, 2022, which was 12 months and ten days after the date that the agency filed its complaint. But R.C. 2151.414(B)(1) does not state that a child is considered to enter the agency's temporary custody on the date that the agency files an abuse, neglect, or dependency complaint or on the date of the child's initial removal from the home. Instead, according to R.C. 2151.414(B)(1), the child is considered to have

entered the agency's "temporary custody" on the earlier of the adjudication date or the date that is 60 days after the child's removal from the home.

{¶50} Here, the trial court adjudicated the child an abused child on November 16, 2021. On October 15, 2021, the child first was removed from the home. Sixty days after the child's removal would have been in mid-December 2021. The earlier date, November 16, 2021, controls for purposes of determining the date that the child entered the agency's "temporary custody." R.C. 2151.414(B)(1). Thus, when the agency filed its October 25, 2022 permanent custody motion, the child had not been in the agency's statutorily defined "temporary custody" for 12 or more months of a 22-month period. Rather, the child had been in the agency's "temporary custody" for a little more than 11 months. Consequently, the evidence does not support a finding under R.C. 2151.414(B)(1)(d) that the child had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period before the agency filed its October 25, 2022 permanent custody motion. The agency thus did not give appellant "the full 12-month period to work toward reunification before moving for permanent custody on R.C. 2151.414(B)(1)(d) grounds." *C.W.*, 2004-Ohio-6411, at ¶ 23. Moreover, the trial court did not enter any alternate R.C. 2151.414(B)(1) findings.

{¶51} Although none of the parties has argued that the trial court incorrectly determined that the child had been in the agency's "temporary custody" for 12 or more months of a consecutive 22-month period, given the parental rights at stake, we believe that sua sponte recognizing the error as plain error is warranted under the circumstances of this case. *See In re C.W.*, 2004-Ohio-1987 (9th Dist.), *affirmed*, 2004-Ohio-6411 (sua sponte recognizing 12-out-of-22 error when the error was obvious);

*accord In re J.C.*, 2010-Ohio-637 (9th Dist.), ¶ 10 (same); *see generally State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("a conviction based on legally insufficient

evidence constitutes a denial of due process" [citations omitted]).

**{¶52}** Additionally, even if appellant had, at one point, not been a model parent,

she had a constitutionally protected right to due process of law before the State forever

terminated her parental rights:

> It is a mere truism to remark that ordinarily there is no more sacred relationship than that between a mother and her child; and that even though a mother may have been grievously at fault at one time in her life, she has the right to have her character and fitness judged as of the time of any hearing concerning her and her child.

*In re Frinzl*, 152 Ohio St. 164, 172 (1949).

**{¶53}** We recognize that the child now has been in the agency's custody for

nearly three years and that reversing the trial court's judgment may cause some

distress. However, given the unusual circumstances present in this case, it is

concerning that the appellant has been forever denied her parental rights without strict

adherence to the mandatory statutory procedures designed to ensure that a parent

receives due process of law before a court terminates parental rights.[3]

**{¶54}** Accordingly, based upon the foregoing reasons, we sustain appellant's

sole assignment of error.

CONCLUSION

---

[3] We further find it questionable whether permanently terminating appellant's parental rights regarding this child is warranted when the accusation appears to be that she is "overwhelmed" caring for this child plus her three other young children. *See In re William S.*, 75 Ohio St.3d 95, 101 (1996), quoting *In Matter of William S.*, 1994 WL 481418, *8 (6th Dist. Sept. 2, 1994) (grant of permanent custody unwarranted when evidence showed only that the mother was "overwhelmed with the responsibility of rearing all four children together"). We also observe that the record indicates that in June 2023, the trial court returned the three older children to appellant's custody subject to the agency's protective supervision.

**{¶55}** Having sustained appellant's assignment of error, we reverse the trial court's judgment that awarded the agency permanent custody of the child and remand this matter to the trial court with instructions to place the child in the agency's temporary custody pending further review.  We emphasize that before the agency can file a new permanent custody motion, it must give appellant the full 12-month period, as defined above, to work toward reunification[4] or assert that one of the other R.C. 2151.414(B)(1) factors apply.

**JUDGMENT REVERSED.**

---

[4] To the extent that the agency believed that R.C. 2151.413(D)(1) required it to file a permanent custody motion, we point out that R.C. 2151.414(D)(3) lists exceptions to that requirement.  R.C. 2151.414(D)(3) provides, in part, as follows:

An agency shall not file a motion for permanent custody under division (D)(1) or (2) of this section if any of the following apply:
(a) The agency documents in the case plan or permanency plan a compelling reason that permanent custody is not in the best interest of the child.
(b) If reasonable efforts to return the child to the child's home are required under section 2151.419 of the Revised Code, the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home.
. . .

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS REVERSED and appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**